# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **TOM EVERETT, *et al.*,** | ) | **Case No. 3:00CV7763** |
| | ) | |
| **Plaintiffs,** | ) | **District Judge David A. Katz** |
| | ) | |
| **v.** | ) | |
| | ) | **MOTION OF DEFENDANT, DOBSON** |
| **VERIZON WIRELESS, INC., *et al.*,** | ) | **CELLULAR SYSTEMS, INC., FOR** |
| | ) | <u>**SUMMARY JUDGMENT**</u> |
| **Defendants.** | ) | |

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendant Dobson Cellular Systems, Inc. ("Dobson") respectfully requests that this Court grant it summary judgment as to all claims asserted by Plaintiffs in their Complaint.  There is no issue of material fact and Dobson is entitled to judgment as a matter of law.  The reasons in support of this Motion are set forth more fully in the attached Memorandum in Support.

Respectfully submitted:

/s/ Charles A. Bowers

Thomas J. Lee (0009529)
*tlee@taftlaw.com*
Charles A. Bowers (0064075)
*cbowers@taftlaw.com*
Taft, Stettinius & Hollister LLP
3500 BP Tower - 200 Public Square
Cleveland, Ohio 44114
(216) 241-2838
(216) 241-3707 (fax)

Attorneys for Defendant

K0092452.3

Dobson Cellular Systems, Inc.

K0092452.3

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **TOM EVERETT, *et al.*,** | ) | |
| | ) | **District Judge David A. Katz** |
| **Plaintiffs,** | ) | |
| | ) | **Case No. 3:00CV7763** |
| **v.** | ) | |
| | ) | |
| **VERIZON WIRELESS, INC., *et al.*,** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

_____

**MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
OF DEFENDANT DOBSON CELLULAR SYSTEMS, INC.**

_____

K0092452.3

## Table of Contents

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Procedural Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Factual Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      I.      Dobson Cellular Systems, Inc. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      II.     Thomas Everett . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      III.    Lutricia Bradley . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

      IV.   John Lunsford And Gregory Baker . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Law & Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

      I.      Summary Judgment Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

      II.     Bradley's Filing of Bankruptcy Divests Her of Standing . . . . . . . . . . . . . . 18

      III.    Plaintiffs' Claims For Breach Of Contract Should Be Dismissed . . . . . . . . 19

            A.     Plaintiffs Have Not Shown That Dobson<br>                  Was Contractually Obligated To Refrain From<br>                  Charging For Unanswered Or Busy Calls . . . . . . . . . . . . . . . . . . . . 20

            B.     Bradley Cannot Demonstrate That She Fulfilled<br>                  Her Contractual Obligations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

            C.     Everett Cannot Point To A Single Call Stemming<br>                  From His October 23, 2000 Agreement With<br>                  Dobson For Which He Was Incorrectly Charged Or Suffered<br>                  Damages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

            D.     A Jury Should Not Be Permitted To Consider<br>                  Suspicion And Speculation Regarding The<br>                  Existence Of A Breach . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

IV.  Summary Judgment Should Be Granted Against Plaintiffs' Claims For Fraud, Misrepresentation, Fraudulent Concealment, And Omission . . . . . . . . . . . 25

  A.  Neither Everett Nor Bradley Allege That Any Misrepresentation Was Made To Them . . . . . . . . . . . . . . . . . . . 26

  B.  Dobson Had No Duty To Disclose Its Billing Practices Regarding Incomplete Calls  . . . . . . . . . . . . . . . . . . . . . . 27

  C.  Plaintiffs Cannot Establish That Any Alleged Misrepresentation Or Omission Was Material To Their Transactions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

  D.  Plaintiffs Have No Evidence That Any Representation Or Concealment Of Fact Was Made Falsely, With Knowledge Of Its Falsity, Or With Such Utter Disregard And Recklessness As To Its Truth Or Falsity Within The Intent To Mislead . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

  E.  Plaintiffs Did Not Relying On Dobson's Alleged Representation Or Concealment . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

  F.  Plaintiffs Have No Evidence That A Resulting Injury Was Proximately Caused By Their Reliance . . . . . . . . . . . . . . . . . 31

V.  Plaintiffs Cannot Establish Negligent Misrepresentation Because: (1) Dobson Did Not Make Any False Statement; (2) Plaintiffs Did Not Rely On Any Alleged Misrepresentation; And (3) Dobson Did Not Fail To Exercise Reasonable Care . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

VI.  The Claims For Breach Of Implied Terms Of Good Faith And Fair Dealing Must Be Dismissed Plaintiffs Have Not Established The Terms Of Their Contracts Or That They Were Damaged, And Dobson Did Not Act In Bad Faith . . . 33

VII.  Plaintiffs' Claims For Unilateral Mistake Should Be Dismissed Because: (1) Plaintiffs' Assumption Regarding Incomplete Calls Was Not Material To Formation Of The Contract; (2) There Is No Evidence That Dobson knew Of Any Charges Taking Place; And (3) A Mistaken Assumption Regarding Future Events Does Not Qualify As A Unilateral Mistake . . . . . . . . . . . . . . . . . . . . 35

K0092452.3

ii

VIII.   Plaintiffs' Cannot Establish That Dobson Breached A Fiduciary Duty to Plaintiffs' Because No Fiduciary Relationship Between Plaintiffs' And Dobson Ever Existed . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  37

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  38

## **Table of Authorities**

### **Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242; 106 S. Ct. 2505, 91 L. Ed.2d 202 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

*Baker v. Penn. Mut. Life Ins. Co.*, 788 F.2d 650 (10th Cir. 1986) . . . . . . . . . . . . . . . . . .  36

*Bauer v. Commerce Union Bank*, Clarksville, Tennessee, 859 F.2d 438 (6th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

*Blon v. BankOne*, 35 Ohio St.3d 98; 519 N.E. 2d 363 (1988) . . . . . . . . . . . . . . . . . . . . . .  27

*Blosser v. Enderlin*, 113 Ohio St.12; 148 N.E. 393 (1925) . . . . . . . . . . . . . . . . . . . . . . . .  20

*Bochard v. American Home Products Corp.*, 213 F. Supp.2d 802, (N.D. Ohio 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  23

*Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548; 91 L. Ed.2d 265 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17, 18

*Delman v. Cleveland Heights*, 41 Ohio St.3d 1; 534 N.E.2d 835 (1989) . . . . . . . . . . .  32

*Foder v. First National Supermarkets, Inc.*, 63 Ohio St.3d 489; 589 N.E.2d 17 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  34

*Garofalov v. Chicago Title Ins. Co.*, 104 Ohio App. 3d 95; 661 N.E.2d 218 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

*Geir Brothers Farms v. Furst-McNess Company*, 186 F.Supp.2d 798 (N.D. Ohio 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  25, 30, 32

*General Motors Corp. v. The Mahoning Valley Sanitary District*, 780 F.2d 1021 (6th Cir., 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  33

*Gen. Tire, Inc. v. Mehlfedt*, 118 Ohio App.3d 109; 691 N.E.2d 1132 (1997) . . . . . . . . .  35

*Harris v. General Motors Corp.*, 201 F.3d 800 (6th Cir. 2000) . . . . . . . . . . . . . . . . . . . . .  18

*Lavelle v. Owens-Corning Fiberglass Corp.*, 30 Ohio Misc.2d 11;
30 Ohio B. 223; 507 N.E.2d 476 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  24

*Layman v. Binns*, 35 Ohio St.3d 176; 519 N.E.2d 642 (1988) . . . . . . . . . . . . . . . . . . . . .  25
*Litton ABS v. Red-Yellow Cab Co.*, 64 Ohio App.2d 111;
411 N.E.2d 808 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  26, 27

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 ;
106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

*Metropolitan Life Ins. Co. v. Triskett Illinois, Inc.*, 97 Ohio App.3d 228;
646 N.E.2d 528 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  34

*Miller v. Shallowford Community Hosp., Inc.*, 767 F.2d 1556 (11th Cir. 1985) . . . . . . . .  19

*Monaghan v. Rietzhe*, 85 Ohio App. 497; 89 N.E.2d 159 (1950) . . . . . . . . . . . . . . . . . . .  26

*Montgomery v. Liberty Twp. Bd. of Ed.*, 102 Ohio St.189;
131 N.E. 497 (1921) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

*Porter v. Columbus Board of Ind. Rels.*, 111 Ohio App.3d 238;
675 N.E.2d 1329 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

*Reedy v. Cincinnati Bengals, Inc.*, 143 Ohio App.3d 516, 758 N.E.2d 678, (2001) . . .  20

*Spartan Tube and Steel, Inc., (In re: RCS Engineered Products Co., Inc.)*,
102 F.3d 223 (6th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

*Spencer Corp. v. City Environmental Services, Inc.*, 80 F.Supp.2d 755
(N.D. Ohio, 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  33, 34

*Stone v. Davis*, 66 Ohio St.2d 74; 419 N.E.2d 1094 (1981) . . . . . . . . . . . . . . . . . . . . . . .  37

*Telephone Management Corp. v. Goodyear Tire & Rubber Co.*, No. 99-3132,
2000 U.S App. LEXIS 2437 (6th Cir., 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  33

*Terrell v. Dura Mechanical Components, Inc.*, 934 F.Supp. 874
(N.D. Ohio, 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  36, 37

*Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*, 115 Ohio App.3d 137;
684 N.E.1261 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  32

*Tibbs v. Natl. Home Constr. Corp*, 52 Ohio App.2d 281; 369 N.E.2d 1218 (1977) . . . .  25

*United States v. Southwestern Elec. Co-Op, Inc.*, 869 F.2d 310 (7th Cir., 1989) . . . . . .  36

*Wolfe v. Woods*, 85 Ohio App.3d 569; 620 N.E.2d 870 (1993) . . . . . . . . . . . . . . . . . .  24, 25

*Yeager v. Local Union 20*, 6 Ohio St.3d 369; 453 N.E.2d 666 (1983) . . . . . . . . . . . .  24, 25

*Zuber v. Ohio Dept. of Insurance*, 34 Ohio App.3d 42;
516 N.E.2d 244 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  32

## **Statutes and Other Authorities**

Fed.R. Civ.P. 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

Fed.R. Civ.P. 26 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

Fed.R. Civ.P. 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

Fed.R. Civ.P. 56(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **TOM EVERETT, *et al.*,** | ) | |
| | ) | **District Judge David A. Katz** |
| **Plaintiffs,** | ) | |
| | ) | **Case No. 3:00CV7763** |
| **v.** | ) | |
| | ) | **MEMORANDUM IN SUPPORT OF** |
| **VERIZON WIRELESS, INC., *et al.*,** | ) | **MOTION FOR SUMMARY JUDGMENT** |
| | ) | **OF DEFENDANT DOBSON** |
| | ) | <u>**CELLULAR SYSTEMS, INC.**</u> |
| **Defendants.** | ) | |

## <u>INTRODUCTION</u>

The factual underpinnings of claims asserted by the named Plaintiffs are false. Plaintiffs' Complaint is built on their assertion that Dobson misrepresented to Plaintiffs that they would not be charged for unanswered or busy calls ("incomplete calls").  However, the only two Dobson customers, Thomas Everett ("Everett") and Lutricia Bradley ("Bradley")[1] have testified that neither of them ever received any representation, written or oral, that Dobson would not charge them for incomplete calls.  Nor could they point to any contractual provisions prohibiting Dobson from charging for incomplete calls.

Equally lacking is any evidence upon which a jury could rely showing that Dobson did, in fact, charge Plaintiffs for incomplete calls.  Neither Plaintiff ever made any record of calls alleged to be incomplete, and neither Plaintiff conducted any tests or created any logs of calls to verify the allegations upon which they purport to base their class action assertions.  Instead,

---

[1] Despite the broad-brush allegations of the Complaint, and as demonstrated below, neither Plaintiff John Lunsford nor Plaintiff Gregory Baker were ever Dobson customers.

K0092452.3

they have chosen to rely on their unsubstantiated personal opinions that calls made to certain people "must" have been incomplete because they usually talk to that person for longer than a minute and a half.  Everett, the lead Plaintiff, admitted that his testimony on this issue amounts to nothing more than his personal suspicions.  In fact, Everett aptly summarized the theory of Plaintiffs' entire case when he testified that, **"I'm not going to prove everything I did, let you prove what you did."** Everett Dep., pp. 189-190.

Plaintiffs' attitude aside, with the failure of their founding premise, Plaintiffs' entire case falls.  For these and all of the following reasons, summary judgment should be granted to Dobson.

## PROCEDURAL BACKGROUND

Plaintiffs filed what they entitled a Consumer Class Action nearly two years ago in the Erie County Court of Common Pleas.  Plaintiffs' claims have been before this Court since their removal in December, 2000.  According to Plaintiffs,

> The central focus of [their] Complaint is that the Defendants misrepresented in uniform written materials that they would not charge for calls that were not answered or were busy and that the Defendants commonly omitted information concerning their practice of actually charging for calls that were not answered or were busy and that they breached contracts with Class Members and the Named Plaintiffs by charging for calls that were not answered or busy.

(Complaint, ¶1.)

Specifically, Plaintiffs allege that Defendants' brochures and other written communications represent that "airtime is not billed for calls that are not answered or are busy."  (Complaint, ¶4.) Plaintiffs then claim that, despite these representations, Defendants

K0092452.3                                            2

charged them airtime for incoming and outgoing calls that were unanswered or busy. (Complaint, pp. 5-6.)  As a result, Plaintiffs define their potential class as,

> All persons and entities who were charged airtime for cellular telephone calls that were not answered or that were busy from and after January 1, 1986, excluding employees, officers, directors, legal representatives, heirs, successors and assignees of the Defendants.

(Complaint, ¶21.)

As filed, Plaintiffs' Complaint contained nine causes of action.  Pursuant to Defendant's Partial Motion to Dismiss for failure to state a claim, this Court dismissed all of Plaintiffs' actions for violations of state deceptive sales statutes (Second Cause of Action) and unjust enrichment (Ninth Cause of Action).  (See 2/27/02 Order.)  The Court also dismissed various claims arising under Michigan law.  The remaining Ohio claims include: (1) Breach of Contract (First Cause of Action); (2) Uniform Written Misrepresentation and Common Omission (Third Cause of Action); Breach of Implied Terms of Good Faith and Fair Dealing (Fourth Cause of Action); Unilateral Mistake (Fifth Cause of Action); (3) Fraudulent Concealment and Deceit (Sixth Cause of Action); (4) Fraudulent Inducement (Seventh Cause of Action); and (5) Breach of Fiduciary Duty (Eighth Cause of Action).

On March 29, 2002, this Court entered a Case Management Order that divided discovery into three phases.  Phase I is defined as "that discovery which concerns (i) the claims of the individual plaintiffs against the named defendants and (ii) any evidence to support or refute any element of Fed.R. Civ.P. 23 insofar as that evidence relates to certification of a state-wide class action."  Phase IA pertains to certification of a nationwide class, if necessary, and Phase II calls for any additional discovery permitted under Fed.R.

Civ.P. 26.  The Phase I discovery cut off date was August 29, 2002.  The Case Management Order also set a dispositive motion deadline of thirty days following the completion of the Phase II discovery, but went on to provide that "any party is free to file a dispositive motion prior to that deadline if such motion is warranted."

Consistent with Phase I discovery, Dobson propounded written discovery requests upon all of the named Plaintiffs and took the depositions of those Plaintiffs who claim to be or to have been customers of Dobson.  Other than propounding Interrogatories to Dobson, Plaintiffs chose not to conduct any discovery during Phase I.

## Factual Background

### I.     Dobson Cellular Systems, Inc.

Dobson, as the successor to Dobson Cellular of Sandusky, Inc., by merger, purchased a cellular license for the OH-2 RSA market on September 2, 1998. (Affidavit of Ronald Ripley ("Ripley Aff.") attached as Exhibit A; ¶ 2.)  From September 2, 1998, until April 9, 1999, New Par (using the trade name Airtouch) continued to operate the OH-2 RSA license under a contract with Dobson.  (Ripley Aff., ¶ 3.)  On April 9, 1999, Dobson bought the cellular network assets, certain subscriber contracts, and other related assets used in the OH-2 RSA market from New Par and adopted the Airtouch trade name.  (Ripley Aff., ¶ 4.)  On February 2, 2002, Dobson sold its license for the OH-2 RSA market, along with Everett's subscriber agreement, back to New Par.  (Ripley Aff., ¶ 6.)

### II.    Thomas Everett.

Among the subscriber contracts Dobson purchased from New Par was that of Everett. (Ripley Aff., ¶ 5.)  Dobson provided Everett with cellular service under his Agreement with New

Par (the "New Par Agreement") until October 23, 2000.  (Ripley Aff., ¶ 6.)  At that time, Everett entered into a new Agreement directly with Dobson (the "Dobson Agreement"); (Ripley Aff., ¶ 6).

Everett, an Ohio resident and businessman, has owned and operated restaurants in the Sandusky area since the mid 1960's.[2]  (Everett Dep., pp. 8-9.)  Since 1992, Everett has been operating his restaurants through a partnership.[3]  In 1997, Everett also began selling real estate as an independent contractor with Coldwell Banker.  (Everett Dep., p. 14.)

Everett entered into his first cellular service agreement with New Par, doing business under the trade name Cellular One, on or about February 26, 1993.  (See Responses and Objections to Everett's First Set of Interrogatories Directed to New Par, Answer to Interrogatory No. 4, attached as Exhibit C.)  Dobson played no role in Everett becoming a New Par customer, continuing Everett as a customer or servicing Everett under any of his subscriber agreements until Dobson purchased Everett's New Par Agreement on April 9, 1999.  (Ripley Aff., ¶ 7.)

Everett himself played little to no role in choosing New Par or Dobson as his cell phone service providers.  When asked how long he was under his initial agreement with New Par, Everett testified that,

> A.    I really don't know because I never took care of these agreements.  My partner, we have 33 phones in the company, he took care of all the phones.  So I really never took care of it

---

[2]    Everett's deposition has been separately filed with the Court.  Selected pages are attached as Exhibit B.

[3]    Everett's partnership, SEC Partnerships, was converted into a limited partnership approximately two years ago.  (Everett Dep., pp. 12-13.)

> myself.  We switched, whatever happened, all I did was go and
> pick up my phone or do the papers, or sign the papers and that
> up until lately.  Now, the last couple of agreements, I have taken
> care of myself.

(Everett Dep., p. 131.)  Since becoming a customer, Everett has received cellular service

through one agreement at a time.  (Everett Dep., p. 148.)  When asked what he did when the

term of his initial agreement ran out, Everett stated that,

> A.    Probably my partner took care of it.  Like I said, the last one or
> two agreements I've taken care of.  Other than that, he's  - - in
> fact, I shouldn't even say  last couple.  When digital came out
> was, must have been, I don't know, 2000 or something.  He set
> up that plan too, so . . .  Up until, I think he probably carried them
> all up to this last plan.  The last one I know for sure I did myself.

> Q.    So up until the most recent cellular agreement that you're under,
> [your partner] has made the decision essentially for you as to
> what phone services to get you and what features?

> A.    No.  We would confer, he would ask me what I want, and then he
> would go for – he would get me deals like, a normal person
> wouldn't get a free phone.  We would get free phones because
> he put the pressure on the company or the girl or whatever.  He
> would get a better deal then I could if I went by myself.

> Q.    Would he choose what cellular company to use?

> A.    Yes.

(Everett Dep., pp. 136.)  In fact, when asked,

> Q.    Did it matter to you which company he chose?

Everett testified that,

> A.    No.  He picks our phone companies for our business, he does
> the deals for the credit cards.  I mean, a lot of people pay like four
> percent for American Express.  We pay 2.8.  He makes the deals
> with the company because, you know, when you have ten motels

and three or four bars, you can make an agreement with the company that one person can't make.

Q.      You have more leverage, right?

A.      Right.

(Everett Dep., p. 140.)

Everett did not rely on any representations by Defendants that he would not be charged airtime for incomplete calls, he simply assumed that to be the case.  (Everett Dep., p. 176.) Everett did not produce any of his cellular service agreements during discovery.  However, he testified that he never read in those contracts that he would not be charged for unanswered or busy calls.  (Everett Dep., pp. 175-177.) [4/]  He also testified that no one ever told him - and that he never read any document indicating - that he would not be charged for unanswered or busy calls.  (Everett Dep., pp. 112-114.)

It is uncontroverted that no such provision appears in the  Dobson Agreement, which is attached hereto as Exhibit E.  Instead, the Dobson Agreement provides that,

¶ 12.   Subscriber promises to pay Airtouch, on a monthly basis, all charges for service, roaming and equipment, as applicable, plus tax.

Dobson's Agreement further provides that,

---

[4/]      Dobson requested these documents in its Request for Production No. 1, Everett's Responses to which are attached as Exhibit D, but they were not produced.  After testifying that he "possibly" still had his Agreements from 1993 to the present, Everett was asked if he had looked for them.  Everett testified that, "Let's say it this way.  I've looked but not extensively.  They are not where I thought they should be."  (Everett Dep., p. 141.)  Everett also testified that he had entered into a new agreement with Verizon two months prior to his deposition and that he had not yet provided a copy to his attorney (Everett Dep., pp. 140-141.)  To date, and not withstanding that discovery closed on August 30, 2002 and that Everett purports to be bringing a class action based upon contractual representations, no contract documents have been produced.

¶ 20.    Subscriber shall indemnify Airtouch against, and shall hold Airtouch harmless from, any and all claims, actions, suits, proceedings, costs, expenses, damages and liabilities, including attorney fees, arising out of, or in connection with, the possession, operations, use, or supply of the equipment and services which are the subject of this Agreement, including but not limited to loss, injury or damage, consequential or otherwise, resulting from mistakes, omissions, interruption of service or delays in the transmission of any message or signal or from any incident involving the equipment.

[and that]

¶ 22.    This document contains the entire Agreement between the parties and no representations, promises, provisions, terms, warranties, conditions, or obligations whatsoever, expressed or implied other than herein set forth shall be binding upon Airtouch.

Everett entered into the Dobson Agreement for the sole purpose of getting a new digital phone.  (Everett Dep., p. 146.)  No representations were made to him at that time and he did not know or have any special relationship with the representative with whom he signed the Agreement.  (Everett Dep., pp. 148-149.)  Everett admitted that he probably did not read the entire Dobson Agreement when he signed it and that, "Like anything you should read before you sign it."  (Everett Dep., pp. 148-149.)

It should also be noted that the Dobson Agreement was entered into less than two weeks before Plaintiffs filed their suit and about four months after Everett started working with his attorney for purposes of filing the suit.  (Everett Dep., pp. 158-159.)  Interestingly, when asked,

Q.    Did you seek out an attorney because of, because you perceived a problem of being charged for incomplete calls?

MR. WARNER:    Again, a time frame being prior to conversation with Dennis Murray.

K0092452.3                          8

        MR. BOWERS:     Obviously, I'm asking.

        A.     Not prior to talking to Dennis Murray, no.

(Everett Dep., p. 161.)

Under both the New Par Agreement and the Dobson Agreement, Everett has only suspicions, no evidence, that he was charged for incomplete calls. At his initial deposition on August 22, 2002, Everett was questioned about each call Everett identified within Deposition Exhibit M as having been incomplete.[5] (Deposition Exhibit M includes invoices from December, 1999 through December, 2000, and is attached hereto as Exhibit F.) Everett's testimony revealed that his sole basis for alleging that a call was incomplete was that it lasted for up to 1.5 minutes and was to someone with whom he thinks he would have talked longer. He also identified calls that lasted for up to 1.5 minutes when he called the same number back shortly thereafter.

The folly of allowing such "guesstimony" to form the basis of a claim was revealed throughout Everett's deposition. Time and time again, Everett testified that he could not even remember why he marked certain calls as being incomplete.[6] (Everett Dep., pp. 51, 55-57, 64-65.) When asked if he had a memory or a record of any of the calls, Everett testified that:

---

[5]     Everett testified that the first time he ever attempted to identify which calls were incomplete was the day before his deposition. (Everett Dep., p. 29.) Although in his Answers to Interrogatories Everett swore that a list of incomplete calls was in the process of being created and would be produced, Everett later testified that he had never even tried to create such a list. (Everett Dep., p. 29; see Everett's Answers to Interrogatory Nos. 5-7, attached as Exhibit D) Everett's deposition had to be continued in order for him to complete his review of the invoices produced in this case. (Everett Dep., pp. 102-103.)

[6]     He had marked them just the day before. Everett later explained that his memory was not so good since his surgery in April, 2001. (Everett Dep., pp. 131-132.)

> Q. Okay.  Now, Mr. Everett, you had mentioned, you don't have any actual independent memory of any of these calls; is that correct?
>
> A. Probably right, yes.
>
> Q. Have you ever written anything down about these calls?
>
> A. No.
>
> Q. As they occurred?
>
> A. No.

(Everett Dep., pp. 48, see also p. 182.)

Many of the calls marked by Everett were to his real estate office.  However, he admitted that he would call his office to retrieve a single message and to let them know that he was coming in.  (Everett Dep., pp. 88-89.)  He marked calls to his wife's phone, but admitted to hanging up once his wife's voice mail picked up.  (Everett Dep., p. 75.)  He marked calls to his restaurant, but admitted that there are times when he calls and tells whoever answers that he will call back because the person he is seeking is not available.  (Everett Dep., p. 33.)  He also alleged that calls to his partners' office were incomplete, but stated that he has left messages with the secretary.  (Everett Dep., p. 34.)  With regard to the repeated calls, which were mostly to his real estate office, Everett admitted that he experienced his phone "cutting out" and that his office had experienced internal phone troubles.  (Everett Dep., pp. 50-51, 157.)

When the parties reconvened for the continuation of Everett's deposition, he had already identified additional calls that he alleged were incomplete within Deposition Exhibit R.  (Deposition Exhibit R contains invoices from April, 1999 through March, 2002, and is

10

attached hereto as Exhibit G.)  Again, Everett identified calls that were up to one minute to people with whom he speculated he would have spoken longer and to numbers which he called back immediately.  (Everett Dep., pp. 186-189.)  When asked about his criteria, Everett testified that:

> Q.    What combination of - what combination of factors caused you to mark calls within Exhibit R?
>
> A.    **A lot of it is just feeling.  I mean, that I think it couldn't be right.  It's not an exact science.**

(Everett Dep., p. 186; emphasis added.)

Everett went on to testify that:

> A.    I might be being too truthful.  On the last batch and that, I kind of got where, you know, <u>I'm thinking like the IRS does, I mark this one, mark that one, let them prove they are wrong</u>.  I probably – didn't I say earlier I think I marked more in the second batch then I did earlier?
>
> Q.    Yes.
>
> A.    Only because I'm getting disgusted, thinking**, I'm not going to prove everything I did, let you prove what you did.**  So, I mean, that's being truthful with you.

(Everett Dep., pp. 189-190; emphasis added.)

Ultimately, Everett testified that,

> Q.    Okay.  **So when you're looking at the invoices in this case and identified calls that you believe were incomplete for which you were charged, it is only your suspicion that these are incomplete calls; is that correct?**
>
> A.    **Yes.**

(Everett Dep. p. 179; emphasis added.)

12

## III.    **Lutricia Bradley**.

Bradley is a resident of Sandusky, Ohio.  (Bradley Dep., p. 7.[7/])  She became a customer of Dobson, doing business as Airtouch, in February, 2000.  (Bradley Dep., pp. 63-64.)[8/]  Prior to becoming a Dobson customer, Bradley was a cellular customer of Nextel.  (Bradley Dep., p. 65.)  She does not know whether Nextel charged her for incomplete calls or whether Nextel advertised that it would not.  (Bradley Dep., pp. 65-66.)  After approximately one year as a Nextel customer, Bradley's service was disconnected for non-payment.  (Bradley Dep., pp. 69-70.)  She decided to switch carriers (without paying her Nextel bill) in order to get a "fresh start."  (Bradley Dep., p. 70.)

Like Everett, Bradley chose Dobson, doing business as Airtouch, to get a new phone.  Her choice was not based in any way on any representation regarding charges for incomplete calls.  Bradley learned of Airtouch through an advertisement posted on the bulletin board at her place of employment, McDonald's Car Wash.  (Bradley Dep., pp. 66-67.)  Although Bradley could not provide or point to the actual advertisement she saw, she wrote down the information that was important to her when she saw it.  (Bradley Dep., pp. 67-69.)  Her notes were produced for the first time at her deposition and marked as Deposition Exhibit J.  Deposition Exhibit J lists the following:

> Airtouch Free Phone
> 200 Free Min.
> Free - Leather Case, Battery + Cigarette Charger

---

[7/]      Bradley filed voluntary Chapter 7 Bankruptcy Petition on January 22, 2002.  That this filing divests Bradley of standing as a Plaintiff in this case is discussed infra.

[8/]      Bradley's deposition transcript has been separately filed with the Court.  Selected pages are attached as Exhibit H.

> 12 Month Contract
> $21.98 Per Month
> $15.00 Activation Fee
> $0.99 a Minute Roaming Charges Out Of Ohio, None in Ohio
> $0.20 a Minute Long Distance
> Suzanne Crawford
> 1-888-695-2567 Ext. 1070

(Bradley Dep., p. 70; Deposition Exhibit J is attached hereto as Exhibit I.)

Bradley then called the number provided and signed up for service with Airtouch. (Bradley Dep., pp. 70-74.)  Bradley testified that she had already made up her mind to purchase service from Airtouch when she made the call and that, "The free phone sold me." (Bradley Dep., pp. 71-72.)  She could not point to any other reason why she chose Airtouch or any representations other than those listed above that were made to her.  (Bradley Dep., pp. 72-74.)

In fact, Bradley admitted that the allegations in her Complaint are not true.  When asked,

> Q.    Okay.  Well, was there anything, that bulletin that you read at McDonald's Car Wash, was there anything in there that you think was a misrepresentation?

Bradley responded,

> A.    Well, I really didn't even pay attention.  At the time I just wanted a phone.

(Bradley Dep., p. 156.)

More specifically, when asked,

> Q.    **Okay.  You never saw anything that said that you wouldn't be charged for incomplete calls, right?**

she answered,

14

    **A.**    **No. I don't believe so. I don't remember seeing anything like that.**

(Bradley Dep., p. 157; emphasis added.)

When confronted with her complaint, the following testimony came forth:

    Q.    Okay. And it further says in that paragraph, "In uniform written materials the defendants misrepresented that they would not charge Ms. Bradley for calls that are not answered or busy." Do you see where it says that?[9]

    A.    Yes.

               * * *

    **Q.**    **And you never actually read anything that said you wouldn't be charged for incomplete calls, correct?**

    **A.**    **Correct.**

(Bradley Dep., p. 164; emphasis added.) Nor did Bradley talk to anyone from Airtouch about being charged airtime for incomplete calls. (Bradley Dep., p. 166.)

Similarly, Bradley is not familiar with the terms of her contract. Although she claims she never received a copy of her contract, Bradley did retain a copy of the credit card and identification information she sent to apply for her Agreement.[10] As to her contract's terms, Bradley testified as follows:

---

[9]    See ¶13 of Plaintiffs' Complaint.

[10]    During the morning session of Bradley's deposition, she testified that she should have a copy of what she sent in, but up until that time, she had not looked. (Bradley Dep., p. 75.) Therefore, after almost two years of being a plaintiff in what is alleged to be a large class action, and more than two months after it had been requested, (See Dobson's Request for Production of Document No. 23), Bradley looked for what became Exhibit K during the lunch break and presented it to defense counsel that afternoon. (Bradley Dep., p. 101.)

Q.      Okay.  And you don't know what the terms of your contract were, right?

A.      No.

Q.      Exhibit K is all you know about your contract?

A.      Right.

(Bradley Dep., p. 164; Deposition Exhibit K is attached hereto as Exhibit J.)

Like Everett, Bradley could only speculate that she was charged for incomplete calls. Shortly before and during the breaks in her deposition, Bradley reviewed all the invoices in her possession and all the invoices produced by Dobson to identify those calls which she claimed were incomplete.[11]  Those calls which Bradley claims were incomplete are contained within Deposition Exhibits F, H, and L.  (Bradley Dep., p. 151.)[12]  Bradley proceeded to mark each alleged incomplete call with a pen in the "total" column of the invoice.

The outcome of this exercise was nothing less than astounding.  First, Bradley made it clear that she had no concept of the claims alleged on her behalf.  The vast majority of the calls she identified were not incomplete calls, but calls she alleges she never even attempted to make because she did not recognize the telephone number or area code.  Within Deposition Exhibit H alone, Bradley initially identified a total of 32 calls.  Out of those 32 calls, Bradley testified that she never made 26 of them.  (Bradley Dep., pp. 44-60.)  Half way through

---

[11]      Dobson's Interrogatory Nos. 5-7 asked that Plaintiffs identify and provide specifics regarding each alleged incomplete call.  Bradley's answers indicated that a list was in the process of being created and would be produced.  (Bradley's Answers to Interrogatories attached as Exhibit K.)  At her deposition, Bradley testified that she never attempted to create such a list and was never asked to do so.  (Bradley Dep., pp. 38-39)

[12]      Deposition Exhibits F, H, and L are attached hereto and marked as Exhibits L, M, and N, respectively.

her testimony regarding the invoices contained in Deposition Exhibit F, Plaintiffs' counsel finally stipulated that this case does not include any allegation that Bradley was charged for incoming or outgoing calls that Bradley never made.  (Bradley Dep., pp. 129-132.)

Second, Bradley made it clear that her identification of "incomplete" calls was based upon pure conjecture.  For each call so identified, Bradley testified that she believes it was incomplete simply and solely because it lasted for less than one and one-half minutes and her belief that she would have spoken to that individual for longer if the call had been completed.  (Bradley Dep., pp. 48-54, 110-111, 118-119, 124-128, 132-151.)   Bradley made no contemporaneous record of any of the challenged calls and never purposely made an incomplete call to determine whether or not Dobson would charge her for it.  (Bradley Dep., pp. 39, 146.)

Bradley identified a total of 28 calls during a one-year period which she claims were actually attempted.  (See Exhibits L, M, and N.)  At least nine of those calls were to individuals who Bradley admitted had voice mail or an answering machine that could have picked up the call.  (Bradley Dep., pp. 118-119, 123-125, 136, 138-139, 143-144.)  At least five more were to her boyfriend's pager when they were both outside of her boyfriend's paging area.[13/] (Bradley Dep., pp. 50-54.)  As the above examples clearly demonstrate, Bradley's only

_____

[13/]     A page is not a call to the individual's pager, but to the paging company's system.  Therefore, even if the paging company cannot reach its customer, the original call was connected to its intended place and a page went out.  (Affidavit of Amy Adrian ("Adrian Aff.") attached as Exhibit O, ¶ 9.)  Note that, as of the filing of this motion, Ms. Adrian was traveling and although she has read and verbally verified the assertions contained in her affidavit, has not been able to execute the affidavit before a notary public.  Consequently, Exhibit O, as attached, is unsigned.  Dobson will, by motion, substitute an executed affidavit as soon as it is available.

"evidence" to support her class action ascertains against Dobson are based on nothing more than personal opinion and speculation.

## IV.    **John Lunsford And Gregory Baker.**

Although Plaintiffs Complaint alleges claims by all four Plaintiffs against Dobson, it is undisputed that neither John Lunsford nor Gregory Baker were ever Dobson customers. (Adrian Aff., ¶ 2); John Lunsford's Answer to Interrogatory Nos. 14 and 15 attached as Exhibit P; and Gregory Baker's Answer to Interrogatory Nos. 14 and 15 attached as Exhibit Q.) Based upon this irrefutable admission, this Court should grant Summary Judgment in favor of Dobson and against Lunsford and Baker as to all claims in the Complaint.

## **LAW & ARGUMENT**

## I.    **Summary Judgment Standard.**

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R. Civ.P. 56(c.)  The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issues of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986.) A defendant satisfies this burden by demonstrating the absence of evidence supporting one or more essential elements of the plaintiff's claim.  477 U.S. at 323-25.  Once the defendant meets this burden, the plaintiff "must set forth specific facts showing that there

is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2541, 91 L. Ed.2d 202 (1986) (quoting Fed.R. Civ.P. 56(e).)

Once the burden of production shifts, a plaintiff cannot rest on its pleadings or merely reassert its previous allegations.  It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 , 586, 106 S. Ct. 1348, 1356, 89 L. Ed.2d 538 (1986).  Instead, Fed.R. Civ.P. 56(e) "requires the nonmoving party to go beyond the pleadings' and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553; see also *Harris v. General Motors Corp.*, 201 F.3d 800, 802 (6th Cir. 2000).  Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S. Ct. at 2552.

## II.     Bradley's Filing of Bankruptcy Divests Her Of Standing.

Regardless of merit - and merit here is clearly lacking - the claims asserted by Bradley must be dismissed as a matter of law because Bradley lacks standing to assert them.  On January 22, 2002, more than one year after this action was filed, Bradley filed a voluntary petition in Bankruptcy in this Court. *In re Bradley,* Case No. 02-30335 (N.D. Ohio).  (Bradley's Bankruptcy Petition and a copy of the docket are attached as Exhibit T.)  As of that date, Bradley was divested of longer had standing to pursue the claims alleged herein.

It is well settled that causes of action belonging to a debtor prior to a bankruptcy become property of the bankruptcy estate once the bankruptcy is filed. *Spartan Tube & Steel,*

*Inc.*, (*In re RCS Engineer Products Co., Inc.*), 102 F.3d 223, 225 (6ᵗʰ Cir. 1996).  The right

to pursue causes of action which belong to the debtor prior to the bankruptcy vests in the

bankruptcy trustee once the bankruptcy petition is filed, and the debtor lacks standing to

assert any such cause of action.  *Bauer v. Commerce Union Bank,* Clarksville, Tennessee,

859 F.2d 438, 441 (6ᵗʰ Cir. 1988).  Thus, the right to pursue the claims alleged by Bradley in

this case became vested in the bankruptcy trustee on January 22, 2002, when Bradley filed

her bankruptcy petition.[14]/  *See Jones v. Harrell,* 858 F.2d 667, 669 (11ᵗʰ Cir. 1988); *Miller v.*

*Shallowford Community Hosp. Inc.,* 767 F.2d 1556, 1559 (11ᵗʰ Cir. 1985).  Since Bradley no

longer has standing to pursue the claims she alleged, and since the Trustee of Bradley's

bankruptcy proceeding has not sought to intervene herein, Bradley's claims should be

dismissed for lack of standing.

## III.   Plaintiffs' Claims For Breach Of Contract Should Be Dismissed.

Plaintiffs do not have evidence sufficient to sustain the  elements of their claim for

breach of contract.  A plaintiff seeking to establish a breach of contract has the burden of

demonstrating "the existence of a binding contract or agreement; the non-breaching party

performed its contractual obligations; the other party failed to fulfill its contractual obligations

without legal excuse; and the nonbreaching party suffered damages as a result of the breach."

*Garofalov v. Chicago Title Ins. Co.*, 104 Ohio App.3d 95, 661 N.E.2d 218, 226 (Cuyahoga

Cty. 1995).  Here, Plaintiffs cannot meet that burden.

---

[14]/     It is noteworthy that Schedule B to Bradley's Bankruptcy Petition (Exhibit T) states that
Bradley had no contingent and unliquidated claims.   Similarly, Bradley's Statement of Financial
Affairs included in the Petition states that Bradley was not a party to any suit or administrative
proceeding.

A. **Plaintiffs Cannot Show That Dobson Was Contractually Obligated To Refrain From Charging For Unanswered Or Busy Calls.**

Even assuming that Dobson charged Plaintiffs airtime for incomplete calls – an assumption which Dobson denies – Plaintiffs cannot establish that such charges were prohibited by Plaintiffs' contracts with Dobson. It has long been the law of Ohio that "[t]he agreement of parties to a written contract is to be ascertained from the language of the instrument, and there can be no intendment or implication inconsistent with the express terms thereof." *Blosser v. Enderlin*, 113 Ohio St.121; 148 N.E. 393, Syllabus 1 (1925). Principles of contract interpretation preclude a court from adding language or terms that the parties omitted. *Porter v. Columbus Board of Industrial Relations*, 111 Ohio App.3d 238, 242-243, 675 N.E.2d 1329 (Franklin Cty. 1996). Put another way, courts "will not insert by construction for the benefit of one of the parties an exception or condition which the parties either by design or neglect have omitted from their own contract." *Porter*, 111 Ohio App.3d at 242, quoting *Montgomery v. Liberty Twp. Board of Education*, 102 Ohio St.189, 193, 131 N.E. 497 (1921).

For example, in *Reedy v. The Cincinnati Bengals, Inc.*, 143 Ohio App.3d 516, 758 N.E.2d 678, (Hamilton Cty. 2001), the court held that "an arbitration provision contained in the terms accompanying the plaintiffs' purchase of rights to hold season tickets to professional football games had no binding effect, when the contract between the parties had already been set forth in an earlier document that made no reference to arbitration." The court reasoned that because there was no meeting of the minds between the parties regarding the arbitration

provision, it was not a term of the existing contract and not enforceable.  *Reedy*, 143 Ohio App.3d at 526; 758 N.E.2d at 686.

Everett and Bradley cannot demonstrate that there was a meeting of the minds between them and Dobson that they would not be charged for incomplete calls.  Everett testified that he did not read any contract term in any of his agreements that prohibited Dobson for charging him airtime for incomplete calls.     Similarly, Bradley cannot demonstrate that there was any term in her contract which prohibited Dobson from charging her for incomplete calls.  In fact, Dobson did not include any such provision its  contracts in February, 2000.  (Adrian Aff., ¶ 4.)  As a result, even if Everett and Bradley could show that Dobson charged them for incomplete calls, they cannot meet their underlying burden of establishing that such practice was not contractually permitted.  Therefore, summary judgment should be awarded to Dobson on Everett's and Bradley's breach of contract claims.

**B.    Bradley Cannot Demonstrate That She Fulfilled Her Contractual Obligations.**

Bradley's breach of contract claim should also be dismissed because she did not fulfill her contractual obligations.  Bradley admitted that she stopped being a Dobson customer the same way she ended her relationship with Nextel - she stopped paying her bill.[15/]  Bradley agreed that her service ended in approximately March, 2001.  (Bradley Dep., p. 80.)  Rather than cancelling her service, she testified that she "just stopped paying it."  (Bradley Dep., p. 80.)  When asked why, she testified that,

---

[15/]     Schedule F to Bradley's bankruptcy petition (Exhibit T attached hereto) demonstrates that Bradley owed Nextel $1,624.77 when she filed for bankruptcy.

> A.    Because they were high and I thought they was charging me too much for calls that I never made.[16]
>
> Q.    Are the bills – for how long did you not pay your bill at the end of the relationship?
>
> A.    I think it was probably, it could have been a couple of months or so.
>
> Q.    And in those couple of months, there would have been some charges for calls that you did make, correct?
>
> A.    Probably.
>
> Q.    Okay.  So there are some charges then or some calls that you did make that you incurred a charge that you decided not to pay?
>
> A.    I believe so.

(Bradley Dep., pp. 81-82.)

Based on the above, Bradley cannot establish that she performed her contractual obligations.  As a result, this Court should award Dobson summary judgment on Bradley's contract claim.

### C.    Everett Cannot Point To A Single Call Stemming From His October 23, 2000 Agreement With Dobson For Which He Was Incorrectly Charged Or Suffered Damages.

Even if Everett could establish that his Dobson Agreement prohibited charging airtime for incomplete calls and that incomplete calls appear on his invoice – a claim which Dobson disputes – he cannot show that he was charged for any such calls or was damaged thereby. Deposition Exhibit R attached hereto contains Everett's invoices from October 23, 2000

---

[16]    Bradley's counsel stipulated that her case does not include any claim for improper charges for calls Bradley never made.

through March, 2002.  (Bate-stamped pp. D482-D591.)  During this time span, Everett's invoices included calls made from his wife's phone.  His wife's number was (419) 357-4910.[17/]  Everett's number was (419) 366-6672.  (Everett Dep., p. 100.)  A review of all of the invoices during this period reveals that Everett was not charged for any of the calls he identified as incomplete under his phone number, save one.  (Adrian Aff., ¶ 7.) The lone call for which Everett received a charge appears on Bate-stamped page D538 of Deposition Exhibit R and is a one minute call to directory assistance dated August 31, 2001, a call for which Everett was charged no airtime, but instead received Dobson's flat fee of $0.89 for all such directory assistance calls. (Adrian Aff., ¶ 8.)  Therefore, Everett has no evidence of being charged airtime for any alleged incomplete calls stemming from the Dobson Agreement. Moreover, Everett has not produced, or attempted to create, an itemized list of damages as requested in Interrogatory No. 8.  (Everett Dep., p. 175.)  Because Everett cannot prove that the prohibition against charges for incomplete calls was part of his contract he can prove no contractual terms that were breached and can prove no damages sustained, this Court should grant Dobson summary judgment on Everett's Breach of Contract claim.

### D.  A Jury Should Not Be Permitted To Consider Suspicion And Speculation Regarding The Existence Of A Breach.

Even if Plaintiffs could show that their contracts contained the terms alleged in their Complaint, their only evidence that Dobson charged them for incomplete calls is purely

---

[17/]  Although Everett marked some calls from his wife's phone (see Bate-stamped pp. D517, D522, D532, D537, D546, D554, D563, D571, D580 of Deposition Exhibit R), he testified that he has no way of knowing if any of his wife's calls were incomplete, (Everett Dep., pp. 201-202), and that, as far as he knows, his wife has not been charged for incomplete calls.  (Everett Dep., pp. 170-171.)

speculative. As this Court stated in *Bochard v. American Home Products Corp.*, 213 F. Supp.2d 802, 807 (N.D. Ohio July 30, 2002), citing *Lavelle v. Owens-Corning Fiberglass Corp.*, 30 Ohio Misc.2d 11, 30 Ohio B. 223, 507 N.E.2d 476, 478-79 (1987), "Ohio law does not permit recovery for the 'mere possibility' that a plaintiff may develop a condition, because that would invite speculation by the jury."

In *Yeager v. Local Union 20*, 6 Ohio St.3d 369, 373; 453 N.E.2d 666, 670 (1983), the plaintiff's complaint included a claim for tortious interference with his employment relationship based on his allegation that the union's picketing and leaflet campaign against him caused his dismissal. In upholding summary judgment for the defendant, the court found that the plaintiff's claim dealt only in conjecture and speculation. *Yeager*, 6 Ohio St.3d at 373, 453 N.E.2d at 670. The court reasoned that "there is no other independent evidence to show that [the plaintiff's] fears or <u>suspicions</u> in this regard are well-founded." *Id.*, (emphasis added). Similarly, the plaintiff in *Wolfe v. Woods*, 85 Ohio App.3d 569, 570; 620 N.E.2d 870 (Allen Cty. 1993), brought an action against a credit bureau for allegedly failing to properly investigate and correct misinformation transmitted to his lending bank. The court upheld summary judgment for the defendants because,

> Although the record contains the deposition testimony of [the plaintiff], we decline, as did the trial judge, to elevate [the plaintiff's] unsupported speculations and <u>suspicions</u> to the level of evidence required to satisfy his threshold burden of providing some proof of malfeasance on the part of [the defendants] which would create on issue upon which reasonable minds could differ.

*Wolfe*, 85 Ohio App.3d at 571, footnote 2; 620 N.E.2d at 871; (emphasis added).

In the present case, this Court should not allow Everett and Bradley to submit their speculations that they were billed for incomplete calls as evidence, especially where, as here, Everett and Bradley could easily have determined the validity of their speculations simply by keeping an accurate of log of calls made for which they believed no charges were warranted.[18]  As in *Yeager* and *Wolfe*, the Plaintiffs suspicions are nothing more than conjecture, and summary judgment against these purely speculative claims should therefore be granted.

## IV.   Summary Judgment Should Be Granted Against Plaintiffs' Claims For Fraud, Misrepresentation, Fraudulent Concealment, And Omission.

Plaintiffs cannot support a claim for fraud, misrepresentation, fraudulent concealment, or omission.  In order to establish common law fraud or intentional misrepresentation, Plaintiffs have the burden of establishing:

> (a)   a representation or, where there is a duty to disclose, concealment of a fact;
> (b)   which is material to the transaction at hand;
> (c)   made falsely, with knowledge of its falsity or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred;
> (d)   with the intent of misleading another into relying upon it;
> (e)   justifiable reliance upon the representation or concealment; and
> (f)   a resulting injury proximately caused by the reliance.

*Geir Brothers Farms v. Furst-McNess Company*, 186 F.Supp.2d 798 (N.D. Ohio Feb. 22, 2002.)  A fraudulent concealment claim is simply an action for fraud "grounded upon failure to fully disclosure facts of a material nature where there exists a duty to speak."  *Layman v.*

---

[18]   Dobson firmly believes that if such a log had been kept and produced, it would have demonstrated that Everett and Bradley were <u>not</u> charged for incomplete calls.

*Binns*, 35 Ohio St.3d 176, 178; 519 N.E.2d 642, 644 (1988). The general rule is that fraud cannot be predicated upon a representation concerning a future event. *Tibbs v. Natl. Home Constr. Corp*, 52 Ohio App.2d 281; 369 N.E.2d 1218 (Warren Cty. 1977). However, a promise made with a present intention not to perform is a misrepresentation of an existing fact – the speaker's state of mind. *Monaghan v. Rietzhe*, 85 Ohio App. 497; 89 N.E.2d 159 (1950). None of the evidence supports any element of fraud, misrepresentation, fraudulent concealment or omission by Dobson, and Dobson should therefore be granted summary judgment on these claims.

### A. Neither Everett Nor Bradley Allege That Any Misrepresentation Was Made To Them.

Plaintiffs cannot meet the first element required to prove a claim of fraud or intentional misrepresentation because neither Plaintiff alleges that Dobson made a misrepresentation. Although Plaintiffs will apparently argue that New Par, doing business under the Airtouch name, advertised that it would not charge airtime for incomplete calls, Everett testified that the first time he ever read or heard that Airtouch made this representation was the day before his deposition on August 22, 2002. (Everett Dep., pp. 112-114.) Bradley, who was a Dobson customer only, admitted that she never read anything stating that she would not be charged for incomplete calls and that she never spoke with anyone about it. (Bradley Dep., pp. 157, 164, 166.) Indeed, Dobson did not advertise that it would not charge for incomplete calls. (Adrian Aff., ¶ 5.) Thus, the evidence demonstrates that Dobson made no misrepresentation.

Even if Everett had been aware of New Par's advertising, Dobson cannot be held liable for New Par's representations on a fraud or misrepresentation claim. The general rule in

27

Ohio, "is that an assignment does not cast upon the assignee any affirmative liability on the contract assigned unless there is an assumption of the assignor's obligations under the contract."  *Litton ABS v. Red-Yellow Cab Co.*, 64 Ohio App.2d 111, 113; 411 N.E.2d 808, 810 (1978).  "Thus the assignee usually cannot be held liable for fraud, misrepresentation or breach of warranty."  *Litton*, 64 Ohio App.2d at 113; 411 N.E.2d at 810.

In this case, even if Plaintiffs somehow can produce evidence of a misrepresentation made by New Par, there is absolutely no evidence that Dobson assumed the liability for such misrepresentation.  Consequently, Plaintiffs have no evidence that Dobson made any misrepresentation whatsoever or that Dobson is responsible for a misrepresentation made by a third party.

### B.  Dobson Had No Duty To Disclose Its Billing Practices Regarding Incomplete Calls.

Plaintiffs apparently intend to claim that although Dobson never represented that it would not charge airtime for incomplete calls, it somehow had a duty to disclose that it would make such charges.  However, even assuming that Plaintiffs could offer more than speculation that they incurred such charges, Plaintiffs cannot establish that Dobson had a duty of disclosure.  The Ohio Supreme Court has held that in ordinary arms-length business transactions, neither party has a duty to disclose material information to the other.  *Blon v. Bank One*, 35 Ohio St.3d 98, 101; 519 N.E. 2d 363, 367 (1988).  Exceptions to the general rule only exist when a party to a business transaction is in a fiduciary relationship with another, where <u>both</u> parties to a transaction understand that a special trust or confidence has been

reposed or where disclosure is necessary to dispel misleading impressions created by partial revelation of the facts. *Blon*, 35 Ohio St.3d at 101; 519 N.E. 2d at 367.

In *Blon*, the court was faced with the question of whether a used car dealership's "representation to [the buyers] that Bank One charged an eighteen and one-half percent interest rate, without disclosing that lower rates were available or revealing that [the dealership] received a higher fee for charging a higher rate, breached a common law duty of complete disclosure owed by Bank One." *Id.* at 100-101. The Court, assuming that the dealer acted as an agent of Bank One, held that no duty of disclosure existed where (1) the plaintiffs had experience with credit transactions; (2) the plaintiffs did not solicit advice regarding other available rates; (3) the plaintiffs received the repayment period they desired; (4) the plaintiffs did not act under any disability; and (5) the plaintiffs were not constrained from seeking financing elsewhere. *Id.* at 101-102; 368. The Court also rejected the plaintiffs' argument that a duty was created because the partial disclosure of interest rates available to them from Bank One was misleading.

The same factors exist in the case at bar. Everett, an experienced businessman, allowed his partner to choose his cellular service company and negotiate the terms of his agreements, because his partner's business leverage allowed him to "pressure" the company into giving him the best deal. Everett also testified that his business partner charges his motel guests by the call, regardless of whether or not the call is completed. (Everett Dep., p. 222.)[19/] Similarly, Bradley had prior experience selling long distance services by telephone (Bradley

---

[19/]     Everett declined to say that this was an unfair practice.  (Everett Dep., pp. 236-237.)

Dep., pp. 15-16) and had a prior service agreement with Nextel.  Neither Everett nor Bradley ever spoke with New Par or Dobson regarding whether or not they would be charged for incomplete calls and both received the free phone that made them choose Dobson.  In addition, neither Plaintiff acted under a disability and neither was foreclosed from shopping for a different carrier.  Finally, Everett cannot rest on any alleged misleading information from New Par because he never read it.  Consequently, Plaintiffs cannot establish that Dobson had a duty of disclosure or that such a duty was breached.

### C.   Plaintiffs Cannot Establish That Any Alleged Misrepresentation Or Omission Was Material To Their Transactions.

Plaintiffs' testimony precludes a finding that any alleged misrepresentations or omissions were material to their transaction.  Everett testified that up until the service agreement he entered into with Verizon approximately two months before his deposition, he had no involvement with choosing his cell phone service carrier.  Instead, he delegated that duty to his partner.  Therefore, Everett did not choose New Par or Dobson based on any alleged representation or understanding that Dobson would not charge for incomplete calls. Moreover, Everett entered into his Dobson Agreement after working on his complaint with his attorney for approximately four months.  If being charged for incomplete calls was material, and if he believed his own allegation that he was being charged for incomplete calls, he would not have entered into his Dobson Agreement, which contains no prohibition against such charges.  For her part, Bradley testified that she only chose Dobson to get a new cell phone and because she owed Nextel money.  Because neither Plaintiff testified that charges for

incomplete calls played a role in their choice of cell phone service carriers, Plaintiffs cannot establish that any alleged misrepresentation or omission was material.

**D.** **Plaintiffs Have No Evidence That Any Representation Or Concealment Of Fact Was Made Falsely, With Knowledge Of Its Falsity, Or With Utter Disregard And Recklessness As To Its Truth Or Falsity With The Intent To Mislead.**

As discussed above, Plaintiffs have only suspicions and speculation that any representations or omissions were, in fact, false.  Plaintiffs have also failed to elicit any evidence that any representations or omissions were made with knowledge of their falsity or with utter disregard and recklessness as to whether they were false.

In pursuing a claim for false representation, a Plaintiff must prove that the Defendant made the misrepresentations knowing they were false.  In a recent case decided by this Court, the plaintiff brought an action, including claims for fraud and intentional misrepresentation, alleging that an animal feed manufacturer falsely misrepresented that the feed was fit for consumption despite its knowledge that it was contaminated.  *Geir Brothers Farms v. Furst-McNess Co*., 186 F.Supp.2d 798 (N.D. Ohio Feb. 22, 2002).  This Court granted summary judgment on the fraud and intentional misrepresentation claims, holding that,

> Even assuming, *arguendo*, that both defendants made false representations to [the plaintiff], [the plaintiff] has offered no evidence to show that the representations were made with knowledge of their falsity or with any disregard of whether they were false.  There is no evidence that [the defendant] ever knew that the Pro Blend was defective, and there is no evidence that [the defendant] knew that the Pro Blend had spoiled and should have been removed from circulation.

*Geir*, 186 F.Supp.2d at 807.

The claims in this case suffer from the same infirmity.  As demonstrated above, there is no evidence that Dobson contracted with Everett or Bradley not to charge for incomplete calls, and even if there were such evidence, there is no evidence that Dobson knew the

representation to be false.  Even if Everett and Bradley honestly thought that they would not be charged for incomplete calls, [20] there is no evidence to show that Everett's and Bradley's professed beliefs were based upon any statement which Dobson made.  Therefore, Dobson can not be held liable for fraud in the inducement.  In addition, without a finding of intent to mislead, Dobson can not be held liable for the alleged future promise of not billing for incomplete calls.

### E.    Plaintiffs Did Not Rely On Dobson's Alleged Representation Or Concealment.

Plaintiffs' own testimony belies their claim that they relied on the alleged misrepresentations and omissions.  As discussed above, Everett did not even participate in the decision to choose New Par or Dobson and Bradley was only interested in the items she wrote down in Deposition Exhibit J, and most importantly, a new phone.  In addition, it goes without saying that Plaintiffs cannot rely on representations that they never heard or read.

### F.    Plaintiffs Have No Evidence That A Resulting Injury Was Proximately Caused By Their Reliance.

Plaintiffs' suspicion and speculation cannot establish that a resulting injury was proximately caused by their alleged reliance.  Simply put, there is no evidence whatsoever, other than pure (and incorrect) suspicion by Everett and Bradley, that Dobson charged for any incomplete call.  Consequently, neither Everett nor Bradley can prove injury or proximate cause.

---

[20]      In this regard it is noteworthy that neither Plaintiff contacted Dobson to complain about being charged for incomplete calls (Everett Dep., p. 38; Bradley Dep., p. 151.)

## V. Plaintiffs Cannot Establish Negligent Misrepresentation Because: (1) Dobson Did Not Make Any False Statement; (2) Plaintiffs Did Not Rely On Any Alleged Misrepresentation; And (3) Dobson Did Not Fail To Exercise Reasonable Care.

Plaintiffs' claims for negligent misrepresentation fail for the same reasons and because there is no evidence that Dobson provided any information indicating that it would not charge for incomplete calls.  The elements of negligent misrepresentation are: (1) one who, in the course of his or her business, profession or employment, or in any other transaction in which he or she has a  securing interest (2) supplies false information for the guidance of others in their business transactions (3) is subject to liability for securing loss caused to them by their justifiable reliance upon the information and (4) if he or she fails to exercise reasonable care or competence in obtaining or communicating the information. *Delman v. Cleveland Heights*, 41 Ohio St.3d 1, 4; 534 N.E.2d 835 (1989).  A negligent misrepresentation claim does not lie for omissions; there must be an affirmative false statement. *Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*, 115 Ohio App.3d 137,149; 684 N.E. 1261 (Summit Cty. 1996); *Zuber v. Ohio Dept. of Insurance*, 34 Ohio App.3d 42, 45-46; 516 N.E.2d 244 (Franklin Cty. 1986).

Neither Everett nor Bradley can establish either that Dobson made or that they relied upon false representation, because neither has shown that Dobson represented to them that Dobson would not bill them for incomplete calls and because neither can establish that they were billed for incomplete calls.  In addition, as in *Geir*, summary judgment is  warranted on Plaintiffs' negligent misrepresentation claims because Plaintiffs cannot put forward any proof that Dobson failed to exercise reasonable care or competence in obtaining or communicating its billing information. *Geir*, 186 F.Supp.2d at 807.  Indeed, where, as here, Dobson never

advertised or put in its contracts that it would not charge for incomplete calls, and where Plaintiffs have no evidence (other than pure speculation) that Dobson actually billed for incomplete calls, summary judgment on Plaintiffs negligent misrepresentation claims must be granted.

**VI.    The Claims For Breach Of Implied Terms Of Good Faith And Fair Dealing Must Be Dismissed Because Plaintiffs Have Not Established The Terms Of Their Contracts Or That They Were Damaged, And Dobson Did Not Act In Bad Faith.**

Ohio law does not recognize breach of an implied covenant of good faith and fair dealing as a tort action "except in the context of the special relationship that exists between insurers and their insureds." *Telephone Management Corp. v. Goodyear Tire & Rubber Co.*, No. 99-3132, 2000 U.S. App. LEXIS 2437, at *19 (6th Cir. Feb. 15, 2000) (attached as Exhibit R). The generalized duty of good faith and fair dealing in the performance and enforcement of a contract "cannot be employed to modify the plain terms of the contract but only construction of them, if at all." *General Motors Corp. v. The Mahoning Valley Sanitary District*, 780 F.2d 1021, *18-19 (6th Cir., Nov. 19, 1985) attached as Exhibit S.

As discussed above, the contracts between Dobson and Plaintiffs do not prohibit billing for incomplete calls. In an attempt to avoid this obvious fundamental defect in their claim, Plaintiffs apparently argue that billing for such calls is prohibited because of some kind of generalized duty of good faith and fair dealing. However, because Plaintiffs are attempting to use this purported "duty" to modify the contract, not to construe it, such a theory is unsupportable as a matter of law.

Moreover, to establish a breach of a duty or covenant of good faith and fair dealing, the Plaintiffs must show bad faith. *Spencer Corp. v. City Environmental Services, Inc.*, 80 F.Supp.2d 755 (N.D. Ohio, Aug. 4, 1999). In *Spencer*, this Court granted summary judgment for the defendant where there was no evidence that the defendant acted in bad faith. *Spencer*, 80 F.Supp.2d at 763. A plaintiff must also be able to demonstrate a causative link between the bad faith and damages. *Metropolitan Life Ins. Co. v. Triskett Illinois, Inc.*, 97 Ohio App.3d 228, 238; 646 N.E.2d 528, 534 (Hamilton Cty. 1994).

In *Foder v. First National Supermarkets, Inc.*, 63 Ohio St.3d 489; 589 N.E.2d 17 (1992), the plaintiff requested that the trial court grant preliminary and permanent injunctions enjoining the defendant from possession of commercial property. The trial court found that the defendant violated its implied contractual duties of good faith and fair dealing and ordered that the plaintiff was entitled to immediate possession. *Id.* The majority opinion upheld the appellate court's reversal on procedural grounds, but Justice Douglas, in his concurring opinion, held that,

> A review of the lease shows that the parties did *not* negotiate a continuous use clause or a *guaranteed* percentage rental clause. Therefore, we cannot enforce such a clause unless we rewrite the lease. We could, of course, find an implied covenant of good faith and fair dealing in this and every other contract but that would inquire a majority of this court to recognize such a covenant in employment relationship as well, a step or majority of this court has, unfortunately, refused to take.

Id. at 493.

In the case at bar, to find that Dobson breached an implied covenant of good faith and fair dealing this Court would need to write into Plaintiffs' contracts provisions about which

Plaintiffs have admitted they were unaware.  In addition, as in *Spencer*, the Plaintiffs have no evidence that Dobson acted in bad faith or that Plaintiffs  were damaged.  As a result, Everett and Bradley's claims for breach of a covenant of good faith and fair dealing should be dismissed.

**VII.** **Plaintiffs' Claims For Unilateral Mistake Should Be Dismissed Because Plaintiffs' Assumption Regarding Incomplete Calls Was Not Material To Formation Of The Contract And Because Plaintiffs' Claimed Mistaken Assumption Regarding The Contract Terms Does Not Qualify As A Unilateral Mistake.**

Plaintiffs cannot support a claim for unilateral mistake because the issue of charging airtime for incomplete calls was not basic to the formation of the contracts.  "A unilateral mistake generally 'occurs when one party recognizes the true effect of an agreement while the other does not.'" *Marshall v. Beech*, 143 Ohio App.3d 432, 437; 758 N.E.2d 247, 251, (Trumbull Cty. 2001), citing *Gen. Tire, Inc. v. Mehlfedt*, 118 Ohio App.3d 109, 115, 691 N.E.2d 1132, 1136 (Summit Cty. 1997).  The mistake itself must be made as to a basic assumption on which the contract was made and have a material effect on the agreed exchange of performances. 1 Restatement of the Law 2d, Contracts (1981) 394, Section 153. In Ohio, that "relief for a unilateral mistake of fact *will not* be provided where such mistake is the result of the negligence of the party seeking relief." *Marshall*, 143 Ohio App.3d at 437; 758 N.E.2d at 251.  The relief associated with a unilateral mistake is recision, which Plaintiffs do not seek.

Just as Plaintiffs cannot establish that any purported representations regarding charging airtime for incomplete calls was material[21], neither can they establish that the issue was basic to their decision to enter into the contracts.  The plain fact is, that neither Plaintiff made any inquiry regarding billing for incomplete calls when entering into their respective contracts, and neither Plaintiff has any non-speculative evidence demonstrating that they were billed for such calls.

Plaintiffs' claims should also be dismissed because the doctrine of unilateral mistake does not cover mistaken predictions or judgments regarding future events.  In *Terrell v. Dura Mechanical Components, Inc.*, 934 F.Supp. 874, 876 (N.D. OH 1996), former employees brought an ERISA action.  The employer filed a third party complaint against the union alleging that the union's sponsorship of the plaintiffs' complaint violated the Plant Closing Agreement.  *Terrell*, 934 F.Supp. at 876.  The Plant Closing Agreement "was meant to be a comprehensive resolution of all issues between the parties," including issues in an ERISA claim pending at the time.  *Id.* at 877.  The employer also argued that the plaintiffs waived their claim to benefits when they ratified the Plant Closing Agreement.  *Id.* at 882.  The plaintiffs responded by arguing that they did not intend to waive their claims and that they ratified the Plant Closing Agreement in reliance on the belief that they would be included in the settlement of the already pending ERISA claim.  *Id.*

The Court initially held that, the "[p]laintiffs' claim that the waiver. . . should not been enforced against them as to the retiree insurance benefits is, at bottom, a claim of mistake"

---

[21]/     Indeed, as demonstrated above, Plaintiffs cannot even establish that any such purported representations were made by Dobson.

[and that] "[t]he doctrine of mistake does not cover an erroneous 'predication or judgment as to events to occur in the future'. . . . " *Id*., quoting *United States v. Southwestern Elec. Co-Op, Inc.*, 869 F.2d 310, 314 (7th Cir. 1989); *Baker v. Penn. Mut. Life Ins. Co*., 788 F.2d 650, 661-62 (10th Cir. 1986). The Court then concluded that the plaintiffs' mistake was nothing more than a mistaken predication that they would be included in the settlement and that, therefore, the plaintiffs could not avoid waiver. In so holding, the Court noted that the plaintiffs did not try to join the class until after the Plant Closing Agreement was ratified and that the employer did not misrepresent to the plaintiffs that they would be included.

Just as the plaintiffs in *Terrell* mistakenly predicted that they would be added to the pending class claim, Everett and Bradley simply "took it for granted" that they would not be charged for incomplete calls. (Everett Dep., p. 176; Bradley Dep., pp. 156-157.) In addition, neither received any misrepresentation, and neither Plaintiff ever complained or even inquired about billing practices before entering into their contracts or even before filing this suit. As a result, Plaintiffs' alleged mistake does not qualify as an attributable unilateral mistake, and this Court should grant Dobson summary judgment on Plaintiffs' unilateral mistake allegations.

**VIII.** **Plaintiffs Cannot Establish That Dobson Breached A Fiduciary Duty To Plaintiffs Because No Fiduciary Relationship Between Plaintiffs And Dobson Ever Existed.**

Plaintiffs denied having any special relationship with Dobson that would support a claim for breach of a fiduciary duty. As this Court stated in its Memorandum Opinion partially granting Defendants' Motion to Dismiss, "normal contractual relationships do not give rise to fiduciary duties...." (2/27/02 Memorandum Opinion, p. 8.) However, a fiduciary duty "may

arise out of an informal relationship where both parties understand that a special trust or confidence has been reposed." (2/27/02 Opinion, p. 8, quoting *Stone v. Davis*, 66 Ohio St.2d 74, 78, 419 N.E.2d 1094, 1097-98 (1981).)  Therefore, this Court held that, "[a]lthough the creation of a fiduciary duty under the circumstances of this case would appear unlikely, the ultimate determination is a factual one that must await summary judgment or trial." (2/27/02 Opinion, p. 9.)

Based on their own testimony, Plaintiffs' fiduciary duty claims have now moved from the realm of unlikely to untenable.  Neither Plaintiff had a relationship with any of the Dobson's employees beyond the level of acquaintance. (Bradley Dep., pp. 18-19; Everett Dep., p. 192.) Bradley testified that Dobson never did anything but provide a service and that Dobson never represented that it would do anything other than provide a service.  (Bradley Dep., p. 159.) Similarly, Everett testified to the following:

> Q.   Your relationship with the defendants in this case, the cell phone companies, would you characterize that as a business relationship?
>
> A.   Yes.
>
> Q.   Anything other than a business relationship?
>
> A.   No.  What other relationship would there be?

(Everett Dep., p. 192.)

In addition, Plaintiffs have failed to establish any evidence that Dobson understood there to be a relationship of special trust or confidence.  Instead, as discussed above, the evidence demonstrates that Plaintiffs' contracts were arm's-length business transactions.  As a result Plaintiffs cannot show that a fiduciary relationship existed, much less than a fiduciary

duty was breached, and this Court should therefore grant Dobson summary judgment on Plaintiffs' breach of fiduciary duty claims.  Plaintiffs' claims for breach of fiduciary duty must also fail.

## CONCLUSION

The entire premise of Everett's and Bradley's case against Dobson is that Dobson improperly billed Everett and Bradley airtime for "incomplete" calls, i.e., calls that were either busy or not answered.  Contrary to this underlying premise, Plaintiffs have no evidence other than pure speculation that they were billed for <u>any</u> incomplete call.  More significantly, Plaintiff's have no evidence that their contracts with Dobson prohibited such billing.  As such, there is no genuine issue of material fact and Dobson should be awarded Summary Judgment against the claims of all Plaintiffs.

Respectfully submitted:

/s/ Charles A. Bowers
Thomas J. Lee (0009529)
*tlee@taftlaw.com*
Charles A. Bowers (0064075)
*cbowers@taftlaw.com*
Taft, Stettinius & Hollister LLP
3500 BP Tower - 200 Public Square
Cleveland, Ohio 44114
(216) 241-2838
(216) 241-3707 (fax)

Attorneys for Defendant
Dobson Cellular Systems, Inc.

## **CERTIFICATE OF SERVICE**

The foregoing was filed electronically this 18th day of November, 2002 with notice

of this filing by operation of the Court's electronic filing system to the following:

Dennis E. Murray, Sr.                          *Attorneys for Plaintiffs*
Patrick G. Warner
Murray & Murray, Co., L.P.A.
111 East Shoreline Drive
Post Office Box 19
Sandusky, OH 44871-0019

Daniel W. Costello                             *Attorneys for Defendants, Verizon*
Kathleen M. Trafford                           *Communications, Inc., Vodafone*
Porter, Wright, Morris & Arthur, LLP           *AirTouch, PLC, AirTouch*
41 South High Street                           *Communications, Inc.*
Columbus, OH 43215-6194                        *and New Par*

     and

Alan C. Yarcusko
Porter, Wright, Morris & Arthur, LLP
925 Euclid Avenue, Suite 1700
Cleveland, OH 44115-1483

/s/ Charles A. Bowers
Charles A. Bowers (0064075)