**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

**THOMAS EVERETT, et al.**

    **Plaintiffs,**

    **v.**

**VERIZON WIRELESS, INC., et al.**


    **Defendants.**

Case No.  3:00 CV 7763

**JUDGE DAVID A. KATZ**

---

**PLAINTIFFS THOMAS EVERETT et al.'s MEMORANDUM IN OPPOSITION TO DEFENDANT DOBSON CELLULAR SYSTEMS, INC.'S MOTION FOR SUMMARY JUDGMENT**

---

Dennis E. Murray, Sr. (0008783)
(dms@murrayandmurray.com)
Patrick G. Warner (0064604)
(pwarner@murrayandmurray.com)
Murray & Murray, Co., L.P.A.
111 East Shoreline Drive
Post Office Box 19
Sandusky, Ohio 44871-0019
Telephone: (419) 624-3000
Facsimile: (419) 624-0707

Attorneys for Plaintiffs

DRAFT/C:\My Documents\Everett et al v Verizon et al\Pleadings\mem contra dobson's motn for sj.doc/1/3/2003/njs

# TABLE OF CONTENTS

I. PROCEDURAL HISTORY ..................................................................................... 1

II. FACTS ................................................................................................................... 3

    A. Lutricia Bradley ............................................................................................. 3

    B. Thomas Everett .............................................................................................. 4

    C. Dobson ........................................................................................................... 8

    D. Facts Pertinent to all Class Members ............................................................ 9

III. LAW AND ARGUMENT ..................................................................................... 10

    A. Bradley's Bankruptcy Filing did not Automatically Divest Her of Standing .......... 10

    B. Plaintiffs' Claims for Breach of Contract should not be Dismissed ..................... 11

        1. Dobson was contractually obligated to refrain from charging for .................... 11

        unanswered calls. ....................................................................................... 11

        2. Bradley was not required to fulfill her contractual terms. ................................ 11

        3. Everett was charged for unanswered calls after October 23, 2000 ................. 12

        and was damaged by these charges. ........................................................... 12

        4. A Jury is permitted to consider Plaintiffs' testimony concerning ...................... 12

        unanswered calls. ....................................................................................... 12

    C. Plaintiffs' Claims for Fraud, Misrepresentation, Fraudulent Concealment ....... 13

    and Omission are not appropriate for Summary Judgment ....................................... 13

        1. Everett and Bradley were the victims of misrepresentations and/or ............... 13

        common omissions. ..................................................................................... 13

        2. Dobson was required to disclose its billing practices. ..................................... 14

        3. Plaintiffs can establish that the alleged misrepresentations and ..................... 14

        omissions were material. .............................................................................. 14

        4. Plaintiffs have evidence that representations and concealment of .................. 15

DRAFT/C:\My Documents\Everett et al v Verizon et al\Pleadings\mem contra dobson's motn for sj.doc/1/3/2003/njs

facts were made falsely, with knowledge of their falsity and with ...........................15

utter disregard and recklessness as to their truth or falsity with the .......................15

intent to mislead. ....................................................................................................15

5.    Plaintiffs relied on Dobson's alleged representation and.................................15

concealment. ..........................................................................................................15

6.    Plaintiffs have evidence that a resulting injury was proximately .....................16

caused by their reliance...........................................................................................16

D.    Plaintiffs can Establish Negligent Misrepresentation .......................................16

1.    Dobson did make a false statement. ................................................................16

2.    Plaintiffs relied on Dobson's misrepresentations. ...........................................17

3.    Dobson failed to exercise reasonable care. ....................................................17

E.    Plaintiffs' Claims for Breach of the Implied Terms of Good Faith and Fair..........18

Dealing should not be Dismissed ...................................................................................18

1.    Plaintiffs can establish the terms of their contracts.........................................18

2.    Plaintiffs can establish that they were damaged.............................................18

3.    Dobson acted in bad faith................................................................................18

F.    Plaintiffs Claims for Unilateral Mistake should not be Dismissed ......................19

1.    Plaintiffs' assumption regarding incomplete calls was material to .................19

formation of the contract..........................................................................................19

2.    Plaintiffs' claimed mistaken assumption regarding the contract .....................19

does qualify as a unilateral mistake.........................................................................19

G.    Reasonable Minds could Differ as to whether Plaintiffs can Establish that
Dobson Breached a Fiduciary Duty to Plaintiffs ...........................................................20

1.    Reasonable minds could differ as to whether a fiduciary relationship ............20

existed between Dobson and Plaintiffs.....................................................................20

DRAFT/C:\My Documents\Everett et al v Verizon et al\Pleadings\mem contra dobson's motn for sj.doc/1/3/2003/njs

# TABLE OF AUTHORITIES

**Cases**

*Adams v. Little Missouri Minerals Assn.*, 143 N.W.2d 659, 683 (N.D. 1966) ................15

*Bouchard [sic: Bouchard] v. American Home Products Corp.* .......................................13

*Cope v. Met. Life Ins. Co.*, 82 Ohio St.3d 426, 435-37 (Ohio 1998) .............................15

*Davis v. Southern Bell Tel. & Tel. Co.*, 158 F.R.D. 173, 176-177 (S.D. Fla. 1994) ........15

*Heastie v. Community Bank of Greater Peoria*, 125 F.R.D. 669, 678 (N.D. Ill. 1989)....15

*Michaels Bldg. Co. v. Ameritrust Co.*, 848 F.2d 674, 679, fn. 8 (6th Cir. 1988) ..............15

*Murray v. Sevier*, 156 F.R.D. 235, 249, fn. 11 (D. Kan. 1994) .......................................15

*Skalbania v. Simmons*, 443 N.E.2d 352, 360 (Ind. App. 1982)......................................15

*Smith-Douglas, Inc.*, 856 F.2d 12 (E.D.N.C. 1988)........................................................11

*Vasquez v. Superior Court of San Joaquin Cty.*, 4 Cal.3d 800, 814-15, 94 Cal.Rptr. 796, 805, 484 P.2d 964 , 972-73 (1971) ............................................................................15

**Statutes**

11 U.S.C. § 554 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Ohio Revised Code § 1701.82 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

**Other Authorities**

37 American Jurisprudence 2d 305, *Fraud and Deceit*, *Section 228* (1968) . . . . . . . 15

**Rules**

Fed. R. Civ. P. 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

DRAFT/C:\My Documents\Everett et al v Verizon et al\Pleadings\mem contra dobson's motn for sj.doc/1/3/2003/njs

The Defendant Dobson Cellular Systems, Inc. ("Dobson") has prematurely moved this Court to take an extraordinary leap of faith and grant summary judgment to it based upon its prophecy that Plaintiffs will be unable to prove their case at trial.  Of course, Dobson is wrong.  Plaintiffs did not file this case with the intention to set forth allegations and await Dobson's honest admission to those allegations.  Plaintiffs have always intended to and will prove their case.  In fact, the arguments that follow refute Dobson's arguments in support of summary judgment and provide an introduction as to how Plaintiffs intend to prove their case.

## I.  PROCEDURAL HISTORY

A brief correction of Dobson's statement of the procedural history is obligatory. Dobson indicates that Plaintiffs chose to do no other discovery during Phase I.  Dobson falsely implies that Plaintiffs were permitted to undertake full discovery during Phase I. Plaintiffs did not do other discovery because the focus of Phase I was discovery concerning certification of an Ohio class.

To fully understand the hypocrisy in Dobson's representation that Phase I offered Plaintiffs the opportunity to complete discovery, one only needs to recall the early history of discovery talks in this litigation.  At the outset, Plaintiffs requested full merits discovery.  The Defendants, including Dobson, argued for limited discovery before determination of whether there would be a state or national class.  The Court agreed and established a discovery plan that would first concern only that discovery necessary to determine what size and type of class might be possible.  Phase I discovery pertained to "the claims of the individual plaintiffs against the named defendants **and** (ii) any evidence to support or refute any element of Fed. R. Civ. P. 23 insofar as that

DRAFT/C:\My Documents\Everett et al v Verizon et al\Pleadings\mem contra dobson's motn for sj.doc/1/3/2003/njs

evidence relates to certification of a state-wide class action."[1]  Thus, the discovery sought by the Plaintiffs in Phase I was that evidence that both pertained to the individual Named Plaintiffs' claims **and** supported certification of an Ohio class.  To the extent that the Plaintiffs sought discovery pertaining to the merits of the Named Plaintiffs' claims, it was only merits discovery that pertained to certification of an Ohio class.

The Defendant New Par proceeded in the same manner.  New Par did not seek to depose Named Plaintiff Todd Lunsford ("Lunsford") because it was not pertinent to the issue of whether an Ohio Class would be certified.  Obviously, Lunsford's testimony is relevant to the merits of the Named Plaintiffs' claims.  After all, Lunsford is himself a Named Plaintiff.  However, the merits of Lunsford's claims were not pertinent to the issue of whether an Ohio class would be certified.  Thus, New Par did not seek discovery pertaining to the merits of the Named Plaintiffs' claims unless those merits also pertained to the issue of whether an Ohio class would be certified.  Plaintiffs proceeded in the same way.

Plaintiffs, like New Par, intend to seek additional and more extensive merit discovery in the other Phases of discovery.  Nevertheless, Plaintiffs are responding to Dobson's motion for summary judgment at this time in an effort to move forward in this litigation.

---

[1] March 29, 2002, Case Management Order (emphasis added).

DRAFT/C:\My Documents\Everett et al v Verizon et al\Pleadings\mem contra dobson's
motn for sj.doc/1/3/2003/njs

## II.  FACTS

Dobson's statement of facts misstates many of the pertinent facts.  Thus, a
correct statement of facts is necessary.

### A.  Lutricia Bradley

The Named Plaintiff Lutricia Bradley ("Bradley") was a subscriber to Dobson's
cellular services.[2]  Bradley used her cellular telephone for personal purposes.[3]  In
uniform written materials, Dobson misrepresented that they would not charge Bradley
for calls that are not answered or busy.[4]  Dobson also omitted material information to
Bradley concerning calls that are not answered or busy.[5]

Although it is largely irrelevant, since Dobson has chosen to misrepresent facts
concerning the issue, certain facts concerning Bradley's cellular service from Nextel
must be corrected.  Bradley had problems with Nextel and decided to discontinue her
service.[6]  Bradley's service with Nextel did not involve charges for calls that were not
answered.[7]  Thus, Bradley's experience with Nextel did not make her aware that a
cellular service provider might charge for calls that were not answered.

Dobson also incorrectly implies that Bradley chose Dobson only to get a new
phone.  Bradley decided to **get cellular service again** because of the new phone.
Bradley did not choose Dobson solely due to the new phone.  Due to her dispute with
Nextel, Bradley's choices in the Sandusky area were limited.  Dobson was her only
other choice.  Nextel and Dobson were the only two providers with even minimal service

---

[2] Compl. ¶ 13.
[3] *Id.*
[4] *Id.*
[5] *Id.*
[6] Bradley Dep. pp. 69-70.
[7] Bradley Dep. pp. 65-66.

DRAFT/C:\My Documents\Everett et al v Verizon et al\Pleadings\mem contra dobson's
motn for sj.doc/1/3/2003/njs

coverage in the area at the time.  Thus, Bradley's choice of Dobson was primarily
determined by Dobson's semi-monopolistic control over the Sandusky area.

### B.  Thomas Everett

The Named Plaintiff Thomas Everett ("Everett") was a subscriber to Dobson's
cellular services.[8]  In uniform written materials Dobson misrepresented that they would
not charge Everett for calls that are not answered or busy.[9]  Dobson also omitted
material information concerning charges to Everett for calls that were not answered or
were busy and breached the contract for cellular services between themselves and
Everett by charging Everett for calls that were not answered or were busy.[10]

Dobson incorrectly argues that it did not service Everett until 1999, because up
until 1998, Dobson Cellular of Sandusky, Inc., with which Dobson merged, provided
cellular service for the area.  As discussed *infra*, Dobson's merger with Dobson of
Sandusky, Inc. did not relieve them of liability for the actions of Dobson of Sandusky,
Inc.

Dobson incorrectly asserts that Everett "played little to no role in choosing New
Par or Dobson as his cell phone service providers."[11] Everett made frequent contact
with Dobson to make complaints and attempt to get a better deal.[12]  Everett was clearly
involved with the choice of cellular service providers and the deal that he received.
Everett indicated that from time to time, he went to the store to discuss alternative
agreements that would resolve problems he was having with his cellular service and he

---

[8] Compl. ¶ 12.
[9] *Id.*
[10] *Id.*
[11] Memorandum in Support of Motion for Summary Judgment of Defendant Dobson Cellular Systems, Inc., p. 5.
[12] Everett Dep. pp. 17-20.

DRAFT/C:\My Documents\Everett et al v Verizon et al\Pleadings\mem contra dobson's motn for sj.doc/1/3/2003/njs

took care of "the last one or two agreements".[13] When Everett was asked if his partner handled the choice of cellular service providers alone, he responded, "[n]o. We would confer…."[14] Thus, Everett did play a role in the cellular service aspects of his business.

Dobson incorrectly implies that Everett's lack of knowledge concerning Dobson's charges for unanswered calls negatively impacts Everett's case.  Dobson's recitation of the facts concerning Everett's testimony that he was never informed he would be charged for unanswered calls simply supports Plaintiffs' allegations that Dobson commonly omitted to inform subscribers that they would be charged for unanswered calls.

Dobson incorrectly implies that their contract with Everett permitted them to charge for unanswered calls.  Everett's contract with Dobson did not provide Dobson the right to charge for unanswered calls.  Everett only agreed to pay "charges for service, roaming and equipment, as applicable, plus tax."[15] He did not agree to pay when he did not actually receive a service – *i.e.* when the call was unanswered.

Dobson's representation that Everett entered into the Dobson Agreement for the sole purpose of getting a new digital cellular telephone only tells part of the story.  Everett needed to get the new digital cellular telephone in order to receive certain services and because he was incorrectly told that it would give him better service.[16]

For whatever reason Dobson mentions that Everett entered into the agreement with Dobson less than two (2) weeks before Plaintiffs filed their suit.  Although this fact is irrelevant, it is worth noting that while Dobson portrays Everett's continued use of

---

[13] Everett Dep. pp.131, 136 and 138.
[14] Everett Dep. p. 136.
[15] Memorandum in Support of Motion for Summary Judgment of Defendant Dobson Cellular Systems, Inc., p. 7, Exhibit E.
[16] Everett Dep. pp. 46-47.

DRAFT/C:\My Documents\Everett et al v Verizon et al\Pleadings\mem contra dobson's motn for sj.doc/1/3/2003/njs

Dobson as a statement of his satisfaction with Dobson, it is actually the result of Dobson's semi-monopolistic control over the Sandusky cellular market discussed *supra*.

At his deposition Everett was asked to identify all calls that he believed were incomplete and he did just that.  Everett identified calls on the basis of the short duration of the call and the impossibility of a completed call to the recipient lasting for such a short duration.[17]

Everett identified some calls where a number of short duration calls to number x were immediately followed by a longer duration call to number x.[18]  Everett explained that this indicated that he was trying to reach someone, could not get through to the intended recipient of the call on the first few attempts and finally got through to the recipient after several unanswered calls.[19]  For example, Everett identified calls that fit a pattern where he was charged airtime of a minute for a call to telephone number x at 2:00 p.m., another minute of airtime for a call to number x at 2:01 p.m., another minute of airtime for a call to number x at 2:02 p.m. and 20 minutes of airtime for a call to number x that began at 2:03 p.m.[20]  This type of call pattern indicated that the first three (3) calls were unanswered and the fourth call was answered.

It simply ignores common sense to say that Everett called the same people each minute for three (3) minutes and only chose to speak to them for one minute the first three (3) times, but twenty (20) minutes the last time.  Moreover, in many cases the number allegedly called three (3) to five (5) or more times for one minute followed by a

---

[17] Everett Dep. pp. 26-96.
[18] *Id.*
[19] *Id.*
[20] *Id.*

DRAFT/C:\My Documents\Everett et al v Verizon et al\Pleadings\mem contra dobson's motn for sj.doc/1/3/2003/njs

call of reasonable duration was a number that Everett knew would be connected for more than one minute if the call had been answered.

Dobson's assertion that "guesstimony" [sic] formed the basis of Everett's marking of unanswered calls is again, supported only by Dobson's half-truth.  Dobson bases this assertion on the fact that Everett could not remember why he marked some of the calls as unanswered.   However, Dobson does not explain that the shear volume of calls lasting less than a minute on Everett's detailed statements made the task of marking each unanswered call a daunting task to say the least.   Everett was asked to mark unanswered calls for all of the years he has had service.   Although Everett limited his exam to calls that had a duration of one and a half (1 ½) minutes or less, the number of calls to be examined was staggering.

While Dobson criticizes Everett's bases for marking unanswered calls, Dobson's reasons for the massive number of calls one and a half (1 ½) minutes or less are utterly lacking in support.  Dobson argues that answering machines, quick conversations and a host of other imaginative explanations account for the staggering number of one and a half (1 ½ minute or less calls for which Everett was charged.

Everett's statement that he was not going to prove everything he did, but let Dobson prove what happened is yet another example of Dobson taking Everett's testimony out of context.  Everett had become disgusted by the shear number of calls that were unanswered for which he was charged airtime.

Everett was disgusted at the number of unanswered calls for which he was charged airtime because he was previously unaware of the extent to which he was charged for unanswered calls.  The task of marking all of the unanswered calls added

DRAFT/C:\My Documents\Everett et al v Verizon et al\Pleadings\mem contra dobson's motn for sj.doc/1/3/2003/njs

insult to injury.  Not only was Everett improperly charged airtime for these unanswered calls, now he had to spend a great deal of time marking the improper charges.

Everett was also disgusted because the task of marking the calls was by itself very taxing.  Thus, Everett said that in his disgust, he was "**thinking**" that Dobson should have to prove their bills were justified.  Although Everett's position is morally the correct one, he and the other Plaintiffs are well aware they will have to prove that they were charged for unanswered calls.

### C. Dobson

Dobson provides a variety of cellular services and products primarily in rural and suburban areas.[21]  Dobson markets their cellular products and services under the predominant brand names used in the market area.  Dobson markets their services under brand names such as Cellular One, AirTouch, and Cellular.  In Ohio, Dobson marketed their cellular services using the AirTouch brand name in the Youngstown area and central northern Ohio.[22]

Dobson's assertion that they are not liable for the unanswered calls between September 2, 1998 and April 9, 1999 because contracted with New Par to operate the OH-2RSA license in Northern Ohio during that time period omits many material facts.[23]  Dobson does not give the terms of the contract.  Dobson does not state who assumed liability for misrepresentations, omissions and breach of contract.  Nor does Dobson tell who designed the documents containing misrepresentations or who established the policies and practices to be followed with respect to charges for unanswered calls.

---

[21] Compl. ¶ 20.
[22] Id.
[23] Memorandum in Support of Motion for Summary Judgment of Defendant Dobson Cellular Systems, Inc., p. 4 & Ripley Aff. ¶ 3.

DRAFT/C:\My Documents\Everett et al v Verizon et al\Pleadings\mem contra dobson's motn for sj.doc/1/3/2003/njs

Dobson's implication that it is not liable for unanswered calls after February 2, 2002., because it "sold its license for the OH-2RSA market, along with Everett's subscriber agreement" on February 2, 2002, also omits material information.[24]  Again, Dobson does not indicate any terms of the contract for the sale of the territory.  For example, Dobson does not state who assumed liability for existing complaints, whose policies concerning unanswered calls would be followed nor any terms relating to Dobson's continuing role in the operation of OH-2RSA.

### D.  Facts Pertinent to all Class Members

Dobson's advertisements, brochures, promotional materials and contracts misrepresent that Dobson did not and does not charge for calls that are not answered or are busy.  The 1997 "Rate and Coverage Guide" that was published while Dobson was operating the OH-2RSA license under the pre-merger name of Dobson Cellular of Sandusky, states "airtime is not billed for calls that are not answered or are busy."[25]

Dobson uniformly omitted to inform Class Members that they would be billed for calls that are not answered or are busy.[26]  Dobson charged Class Members for calls that were not answered or were busy even though Dobson's contracts with Class Members does not permit Dobson to bill for calls that are not answered or are busy.

As a result of Dobson's deceptive, fraudulent and misleading practices complained of herein, the Class Members did not receive the full amount of flat-rate airtime allocated under the plan that they selected and contrary to what Dobson

---

[24] Memorandum in Support of Motion for Summary Judgment of Defendant Dobson Cellular Systems, Inc., p. 4 & Ripley Aff. ¶ 6.
[25] Complaint App. 1.
[26] Everett Dep. pp. 113-14; Bradley Dep. p. 66.

DRAFT/C:\My Documents\Everett et al v Verizon et al\Pleadings\mem contra dobson's
motn for sj.doc/1/3/2003/njs

represented, Class Members were charged for calls that were not answered or were
busy.

Dobson's billing statements concealed charges for calls that were not answered
or were busy. Dobson's billing statements were purposely unintelligible and Class
Members were given only a few days to review their statements before their bill was
due. Dobson's billing statements did not show charges for calls made within the Class
Members' 'free minutes". Charges for calls that were not answered or busy that came
within Class Members' "free minutes" were concealed. Dobson encourages Class
Members to purchase a plan with the most "free minutes" and requires Class Members
to pay additional fees to obtain a billing statement showing the calls within their "free
minutes".

Dobson was fully aware that Class Members did not know they were being
charged for calls that were not answered or were busy. Dobson failed to notify the
Class at the inception of the parties' contractual relationship and thereafter intentionally
concealed this fact. Dobson actively concealed these material facts despite their duty
and numerous opportunities to fully disclose this critical information in monthly billing
statements and other communications with Class Members.

## III. LAW AND ARGUMENT

Despite an incredible number of arguments, Dobson does not provide a single
basis for granting summary judgment as to any of the Plaintiffs' claims.

### A. Bradley's Bankruptcy Filing did not Automatically Divest Her of Standing

Dobson's argument that Bradley's filing of bankruptcy divests her of standing
ignores that Bradley's trustee has released her to proceed with this lawsuit. Bradley's

DRAFT/C:\My Documents\Everett et al v Verizon et al\Pleadings\mem contra dobson's motn for sj.doc/1/3/2003/njs

trustee has abandoned her causes of action in this litigation pursuant to 11 USCS § 554 (2002).[27]  Where the trustee releases the bankruptcy estate's claim, the bankruptcy petitioner is free to pursue the claim individually.[28]

### B. Plaintiffs' Claims for Breach of Contract should not be Dismissed

#### 1. Dobson was contractually obligated to refrain from charging for unanswered calls.

Dobson did not have a contractual right to charge for unanswered calls.  The contract with the Named Plaintiffs only permitted Dobson to charge for actual services. When the call is unanswered, no service has been provided.  The only way Dobson would be entitled to charge for unanswered calls would be to affirmatively give themselves that right in the contract – as AT&T does in their terms and conditions.[29]  At a minimum, Dobson had a duty to disclose in their rate guides, as Verizon has recently disclosed,[30] that subscribers may be charged for calls connected more than sixty (60) seconds even though the call is not answered.

#### 2. Bradley was not required to fulfill her contractual terms.

Dobson's argument that Bradley was required to fulfill her contractual terms is contradicted by their admission that Bradley did not have a contract.  Nor does Dobson

---

[27] Agreed Order Granting Relief From Stay and Abandonment to Bradley (Exhibit 1).

[28] *In re Smith-Douglas, Inc.*, 856 F.2d 12 (E.D.N.C. 1988)(Overriding purpose of Bankruptcy Code is expeditious and equitable distribution of debtor's estate, therefore state laws which obstruct expeditious and equitable distribution are preempted by Bankruptcy Code; 11 U.S.C. § 554 serves purpose of expeditious and equitable distribution by permitting trustee to abandon property that consumes resources and drains income of estate.)

[29] AT&T discloses in their terms and conditions that subscribers may be charged for unanswered calls if the call is connected for more than thirty (30) seconds. See, e.g. http://www.attws.com/mobileinternet/terms.jhtml ("**While on the AT&T Wireless network**, there is no charge for busy or unanswered calls **if you end the call within 30 seconds**.")(emphasis added).  The key to AT&T's disclosure is that they acknowledge – unlike Dobson – that subscribers may be billed for unanswered calls that are not made on their network and do not last more than 30 (thirty) seconds.

[30] "Single Rate" Guide. (Exhibit 2, App. 1).

DRAFT/C:\My Documents\Everett et al v Verizon et al\Pleadings\mem contra dobson's motn for sj.doc/1/3/2003/njs

allege that they had an oral contract with Bradley.   Thus, Bradley did not have any contractual terms to fulfill.

### 3. Everett was charged for unanswered calls after October 23, 2000 and was damaged by these charges.

Dobson's argument that Everett was not charged for unanswered calls after October 23, 2000, and was not damaged, is deceptive.   Dobson deceptively maintains that because Everett did not exceed his plan minutes, he was not charged for unanswered calls.   However, whether or not Everett exceeded his planned minutes, he was still charged for unanswered calls and he was damaged by these improper charges.[31]

Everett was damaged by the charges for unanswered calls regardless of whether he exceeded his planned minutes.   Everett testified that as the minutes on his bill increased it caused him to change to a plan that had more "free minutes".[32]   The more "free minutes" Everett sought the more he had to pay.   Thus, Dobson's charges for unanswered calls directly caused Everett to incur a higher monthly fee than he would otherwise have had if his bill did not contain minutes of airtime charged for unanswered calls.[33]

### 4. A Jury is permitted to consider Plaintiffs' testimony concerning unanswered calls.

As explained *supra*, Plaintiffs' claims are not based on speculation and suspicion. The mere fact that the Named Plaintiffs did not possess expertise to explain how they were charged for unanswered calls does not mean they cannot prove their case.

---

[31] Everett Dep. pp. 108-10; Kaufman Aff. ¶ 12, fn. 3 (Exhibit 3).
[32] Everett Dep., pp. 108-10.
[33] Everett Dep. pp. 108-10; Kaufman Aff. ¶ 12, fn. 3.

DRAFT/C:\My Documents\Everett et al v Verizon et al\Pleadings\mem contra dobson's motn for sj.doc/1/3/2003/njs

Plaintiffs have hired competent experts to represent them and assist in proving their case through documents maintained in the ordinary course of business.

Dobson's mistakenly argues that *Bouchard [sic: Bouchard] v. American Home Products Corp.*[34] applies to prohibit Plaintiffs' testimony  from being heard by a jury.  As this Court knows well, *Bouchard* involved the issue of future physical injury.   In *Bouchard*, this Court determined that Ohio law would not permit Bouchard to recover for the possibility that she may develop future physical ailments.[35]   This case is entirely different from *Bouchard*.

Plaintiffs are not seeking to recover for the possibility that they may develop future physical ailments.  Nor are Plaintiffs seeking to recover for a possibility that they may be damaged in the future. Rather, Plaintiffs seek recovery for an injury that has occurred and continues to occur.

### C. Plaintiffs' Claims for Fraud, Misrepresentation, Fraudulent Concealment and Omission are not appropriate for Summary Judgment

#### 1. Everett and Bradley were the victims of misrepresentations and/or common omissions.

Both Everett and Bradley testified that they were never told or informed that they would be charged for unanswered calls.[36]   Moreover, the documents produced by Plaintiffs indicate that Dobson misrepresented that Plaintiffs would not be charged for unanswered calls and omitted to inform the Plaintiffs that they would be charged for unanswered calls.[37]

---

[34] 213 F.Supp.2d 802 (N.D. Ohio 2002).
[35] Id. at 807.
[36] Everett Dep., pp. 113-14, Bradley Dep. p. 66.
[37] Complaint App. 1 & 2.

DRAFT/C:\My Documents\Everett et al v Verizon et al\Pleadings\mem contra dobson's motn for sj.doc/1/3/2003/njs

### 2.  Dobson was required to disclose its billing practices.

As explained *supra*, other cellular service providers --recently including Verizon -- explain how subscribers may incur charges for an unanswered call.  Like these cellular providers, Dobson was required to disclose that it charged for unanswered calls.

Moreover, Dobson knew that there were brochures under the AirTouch name that they were using which falsely stated they would not charge for unanswered calls. The AirTouch prepaid wireless guide stated that "[t]here is no charge for unanswered calls….[38]  The 1997 AirTouch Rate Guide for the Sandusky area also stated that Class Members would not be charged for unanswered calls.[39]  Dobson had a duty to affirmatively correct these false statements.

### 3.  Plaintiffs can establish that the alleged misrepresentations and omissions were material.

Plaintiffs have set forth misrepresentations and omissions concerning charges for unanswered calls.  Dobson's current position that they never said subscribers would not be charged for unanswered calls is founded upon the flawed assertion that they are not liable for the pre-merger period before 1998 when Dobson Cellular of Sandusky was operating the license for the Sandusky area.  As discussed *infra,* Dobson is liable for the acts of Dobson Cellular of Sandusky.

---

[38] Warner Aff., App. 2.
[39] Compl. App. 1.

DRAFT/C:\My Documents\Everett et al v Verizon et al\Pleadings\mem contra dobson's motn for sj.doc/1/3/2003/njs

**4. Plaintiffs have evidence that representations and concealment of facts were made falsely, with knowledge of their falsity and with utter disregard and recklessness as to their truth or falsity with the intent to mislead.**

Dobson obviously concealed the falsity of their information with utter disregard and recklessness as to the truth of their representations that they would not charge for unanswered calls. The testimony of Everett and Bradley confirms that they had no idea they would be charged for unanswered calls.[40] The documents produced by Dobson also reveal that they did not disclose that Class Members would be charged for unanswered calls.[41] Thus, Dobson clearly omitted to tell what they knew to be true – that Plaintiffs and Class Members would be charged for unanswered calls.

**5. Plaintiffs relied on Dobson's alleged representation and concealment.**

Plaintiffs have also submitted proof of Dobson's common written misrepresentations and omissions concerning charges for unanswered calls. The 1997 AirTouch "Rate and Coverage Guide" stated "airtime is not billed for calls that are not answered or are busy."[42] The AirTouch Welcome Rate Plan stated "airtime is not billed for calls that are not answered or are busy."[43] Other documents produced by Dobson commonly omit to inform Class Members that they may be charged for unanswered calls.[44] Where common misrepresentations and omissions are alleged, "**then at least an inference of inducement and reliance would arise as to the entire class, thereby obviating the necessity for individual proof on these issues."[45]**

---

[40] Everett Dep., pp. 113-14; Bradley Dep. p. 66.
[41] Warner Aff., App. 3.
[42] Complaint ¶ 41, App. 1.
[43] Complaint ¶ 41, App. 2.
[44] See documents bates numbered N-0043-46.
[45] *Cope v. Met. Life Ins. Co.*, 82 Ohio St.3d 426, 435-37 (Ohio 1998)(citing *Michaels Bldg. Co. v. Ameritrust Co.*, 848 F.2d 674, 679, fn. 8 (6th Cir. 1988); *Davis v. Southern Bell Tel. & Tel. Co.*, 158 F.R.D.

DRAFT/C:\My Documents\Everett et al v Verizon et al\Pleadings\mem contra dobson's motn for sj.doc/1/3/2003/njs

### 6. Plaintiffs have evidence that a resulting injury was proximately caused by their reliance.

As explained *supra*, Plaintiffs' expert intends to prove – at the appropriate stage of discovery -- when Dobson's switching records are produced -- that the Plaintiffs were charged for calls that were not answered. Plaintiffs' expert will compare Dobson's records from the switches with Dobson's records from Dobson's billing system to determine which calls were incorrectly billed to Class Members.

### D. Plaintiffs can Establish Negligent Misrepresentation

### 1. Dobson did make a false statement.

Dobson's argument that they did not make a false statement is false.  Dobson apparently bases their argument on a false assertion that they have no liability for the representations made prior to April 9, 1999.  Dobson seeks to disassociate itself with Dobson Cellular of Sandusky, Inc., which operated the license until September 1998. Many of the misrepresentations were contained in documents used before September 1998.  Thus, it is no surprise that Dobson seeks to distance itself from the company that it merged with in 1998.  However, it is not so easy for Dobson to shed liability.

Ohio Revised Code § 1701.82 provides in pertinent part:

(A) When a merger or consolidation becomes effective, all of the following apply:

(3) The surviving or new entity possesses all….obligations belonging to or due to each constituent entity, all of which are vested in the surviving or new entity without further act or deed….

---

173, 176-177 (S.D. Fla. 1994); *Murray v. Sevier*, 156 F.R.D. 235, 249, fn. 11 (D. Kan. 1994); *Heastie v. Community Bank of Greater Peoria*, 125 F.R.D. 669, 678 (N.D. Ill. 1989); *Adams v. Little Missouri Minerals Assn.*, 143 N.W.2d 659, 683 (N.D. 1966);  37 American Jurisprudence 2d 305, *Fraud and Deceit, Section 228* (1968); *Skalbania v. Simmons*, 443 N.E.2d 352, 360 (Ind. App. 1982); *Vasquez v. Superior Court of San Joaquin Cty.*, 4 Cal.3d 800, 814-15, 94 Cal.Rptr. 796, 805, 484 P.2d 964 , 972-73 (1971))

DRAFT/C:\My Documents\Everett et al v Verizon et al\Pleadings\mem contra dobson's motn for sj.doc/1/3/2003/njs

> (4) The surviving or new entity is liable for all the obligations of each constituent entity, including liability to dissenting shareholders. Any claim existing or any action or proceeding pending by or against any constituent entity may be prosecuted to judgment, with right of appeal, as if the merger or consolidation had not taken place, or the surviving or new entity may be substituted in its place.

Accordingly, Dobson cannot escape the obligations resulting from the acts of Dobson Cellular of Sandusky.  Dobson is liable for the acts of Dobson Cellular of Sandusky as if the merger had never taken place.

### 2.  Plaintiffs relied on Dobson's misrepresentations.

As explained *supra*, the mere fact that Plaintiffs could not recall the misrepresentations that they saw when purchasing service from Dobson does not preclude a finding of reliance.  If the Plaintiffs can show that there were common misrepresentations and omissions, a jury may be entitled to presume reliance.[46]

### 3.  Dobson failed to exercise reasonable care.

Dobson's failure to disclose that they would charge for an unanswered call if it was connected for a certain length of time violated the standard of reasonable care.  As discussed *supra,* other cellular service providers have deemed it reasonable to disclose that subscribers may be charged for unanswered calls.

The standards established by the industry are pertinent when evaluating what is reasonable.  Other industry cellular service providers have established that it is reasonable to disclose that subscribers will be charged for unanswered calls if the call is connected for more than a specified period of time.  Dobson has failed to satisfy this standard and thereby failed to exercise reasonable care.

---

[46] fn 30, *supra*.

DRAFT/C:\My Documents\Everett et al v Verizon et al\Pleadings\mem contra dobson's motn for sj.doc/1/3/2003/njs

### E.   Plaintiffs' Claims for Breach of the Implied Terms of Good Faith and Fair Dealing should not be Dismissed

#### 1.   Plaintiffs can establish the terms of their contracts.

Dobson incorrectly argues that Plaintiffs cannot establish breach of contract because they cannot establish the terms of their contract.   The terms of Everett's contract are clearly established by the contract itself.   As discussed *supra*, Everett's contract did not permit Dobson to charge Everett airtime for unanswered calls.   Nor did Dobson have a contractual right to charge Bradley for unanswered calls.   Dobson has admitted that it did not have a contract with Bradley.

#### 2.   Plaintiffs can establish that they were damaged.

As discussed *supra*, Plaintiffs' expert can and will establish that Class Members were damaged.   Comparison of the Defendants' switching system records with Defendants' billing system records will demonstrate that Class Members, including the Named Plaintiffs were damaged.[47]   Moreover, using the records from these two systems and modeling the four records that are not available, Plaintiffs can calculate damages for the entire Class.

#### 3.   Dobson acted in bad faith.

Dobson acted in bad faith by charging Class Members for unanswered calls. Dobson purposely concealed their illegal charges for unanswered calls.   Dobson knew the contract with Plaintiffs did not permit them to charge for unanswered calls.   Yet Dobson charged for unanswered calls and concealed their wrongful acts from Plaintiffs. Dobson's actions go beyond what is required to constitute bad faith.

---

[47] Kaufman Aff. ¶ 12, fn. 3.

DRAFT/C:\My Documents\Everett et al v Verizon et al\Pleadings\mem contra dobson's motn for sj.doc/1/3/2003/njs

### F.  Plaintiffs Claims for Unilateral Mistake should not be Dismissed

#### 1.  Plaintiffs' assumption regarding incomplete calls was material to formation of the contract.

Plaintiffs' assumptions concerning the manner in which they would be charged for cellular service were material to the formation of Plaintiffs' contract with Dobson. Plaintiffs certainly did not anticipate being charged when Dobson did not provide a service.  Everett's contract with Dobson explained what he would be billed for and did not state he would be billed for unanswered calls.

The mere fact that Plaintiffs had other assumptions/motivations for contracting with Dobson does not change the materiality of their assumptions concerning the manner in which they would be charged for airtime.  Plaintiffs assumed that they would not be charged for unanswered calls.   Plaintiffs' assumption was material to the formation of the contract.

#### 2.  Plaintiffs' claimed mistaken assumption regarding the contract does qualify as a unilateral mistake.

Plaintiffs' assumption concerning the manner in which they would be charged for airtime was a unilateral mistake.  A unilateral mistake of fact occurs when one party to a contract enters into the contract under a mistaken assumption concerning a term of the contract and the other party knows that the mistaken party is operating under the mistaken assumption.

The Named Plaintiffs were mistaken about charges for unanswered calls.  The Named Plaintiffs did not believe they would be charged for unanswered calls.  Indeed, Everett's contract omitted to inform him that he would be charged for unanswered calls.

DRAFT/C:\My Documents\Everett et al v Verizon et al\Pleadings\mem contra dobson's motn for sj.doc/1/3/2003/njs

Dobson knew or should've known the Named Plaintiffs were mistaken about charges for unanswered calls. The Rate Guide stated that they would not be charged for unanswered calls. Other documents omitted to inform the Named Plaintiffs that they would be charged for unanswered calls.

### G. Reasonable Minds could Differ as to whether Plaintiffs can Establish that Dobson Breached a Fiduciary Duty to Plaintiffs

#### 1. Reasonable minds could differ as to whether a fiduciary relationship existed between Dobson and Plaintiffs.

Reasonable minds could differ as to whether a fiduciary relationship existed between Dobson and the Named Plaintiffs. Dobson's semi-monopoly created a duty for Dobson to act with the utmost good faith. Dobson acknowledged this duty to the public when they advertised to obtain new subscribers. Dobson's "Business Rates and Coverage" guide states, "Not only do we offer the most comprehensive coverage and affordable rates, we stand behind what we sell. Best of all, when you choose Cellular One [Dobson], you get a team of professionals available 24-hours a day to answer your questions and provide assistance."[48] However, now Dobson conveniently seeks to rid itself of the duty. Reasonable minds could conclude that duty continues even after the subscriber signs up for Dobson's cellular service.

---

[48] Document Bates numbered D285, Exhibit 2, App. 3.

DRAFT/C:\My Documents\Everett et al v Verizon et al\Pleadings\mem contra dobson's motn for sj.doc/1/3/2003/njs

## IV.   CONCLUSION

Dobson has failed to prove that reasonable minds could come to only one conclusion and that conclusion is adverse to the Plaintiffs on every claim.  Accordingly, Dobson is not entitled to Summary Judgment on Plaintiffs' claims.

Respectfully submitted,

*/s/ Dennis E. Murray, Sr.*
Dennis E. Murray, Sr. (0008783)
(dms@murrayandmurray.com)
Patrick G. Warner (0064604)
(pwarner@murrayandmurray.com)
Murray & Murray, Co., L.P.A.
111 East Shoreline Drive
Post Office Box 19
Sandusky, Ohio 44871-0019
Telephone: (419) 624-3000
Facsimile: (419) 624-0707

Attorneys for Plaintiffs

DRAFT/C:\My Documents\Everett et al v Verizon et al\Pleadings\mem contra dobson's motn for sj.doc/1/3/2003/njs

## CERTIFICATION

This is to certify that a copy of the foregoing **PLAINTIFFS THOMAS EVERETT et al.'s MEMORANDUM IN OPPOSITION TO DEFENDANT DOBSON CELLULAR SYSTEMS, INC.'S MOTION FOR SUMMARY JUDGMENT** was forwarded via the Court's electronic filing system to the following counsel of record:

Thomas J. Lee
Charles A. Bowers
Taft, Stettinius & Hollister LLP
3500 BP Tower
200 Public Square
Cleveland, Ohio  44114

     Attorneys for Defendant Dobson Cellular Systems, Inc.

Daniel W. Costello
Kathleen M. Trafford
Porter Wright Morris & Arthur LLP
41 South High Street
Columbus, Ohio  43215-6194

     Attorneys for Defendants, Verizon Communications, Inc., Vodafone AirTouch, Plc, AirTouch Communications, Inc. and New Par

on this January 3, 2003.

                    */s/ Dennis E. Murray, Sr.*
                    Dennis E. Murray, Sr. (0008783)
                    Patrick G. Warner (0064604)
                    MURRAY & MURRAY CO., L.P.A.